UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MT. HAWLEY INSURANCE COMPANY,                          Case No.
an Illinois Corporation,

                                        Plaintiff,           **COMPLAINT FOR
                                                             DECLARATORY RELIEF**

                    - against –

SPRING MOUNTAIN VINEYARD, INC.,
a Delaware Corporation,

                                        Defendant.
------------------------------------------------------------------------X

     Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by its attorneys, Chartwell Law,

as and for its complaint against defendant Spring Mountain Vineyard, Inc. ("SMV"), respectfully

alleges the following:

## INTRODUCTION

     1.    Mt. Hawley brings this action for a declaratory judgment concerning the rights and

the obligations of the parties under the terms of a $10 million excess commercial property

insurance policy that it issued SMV, policy no. MCP0170029, which sits excess of $10 million in

underlying insurance that SMV procured from other insurers. SMV sustained certain losses during

a wildfire in St. Helena, California, which commenced on September 27, 2021 (the "Glass Fire").

SMV contends that its covered losses from the Glass Fire are sufficient to reach and indeed to

exhaust the coverage under Mt. Hawley's excess policy. Mt. Hawley has been investigating

SMV's claims, but SMV recently stated it would no longer comply with the policy conditions or

cooperate with the investigation and has accused Mt. Hawley of breach of contract and bad faith

for not paying the claim. Mt. Hawley disputes those accusations. Thus, there exists an actual,

justiciable controversy regarding Mt. Hawley's payment obligations, if any, under the terms of the

parties' insurance contract.

## THE PARTIES

2.     Mt. Hawley is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Peoria, Illinois. Mt. Hawley is a citizen of Illinois.

3.     SMV is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in St. Helena, California. It is a citizen of Delaware and California.

## JURISDICTION AND VENUE

4.     The Court has original jurisdiction over the present action under 28 U.S.C. § 1332, because there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. SMV contends that Mt. Hawley owes the full $10 million limits under the Policy. Venue is proper within this District pursuant to 28 U.S.C. §§1391(b)(2) and (d). SMV is subject to personal jurisdiction in this District, and additionally, a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, the parties agreed, contractually, to litigate any dispute under the Policy in New York.

5.     Mt. Hawley's excess Commercial Property Policy issued to SMV, discussed more fully below, includes a New York forum selection clause providing in part:

> any Named Insured... shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction... Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

6.     The Mt. Hawley excess policy also follows form, in relevant part, to First Specialty Insurance Corporation primary policy no. ESP 2004867 00 issued to SMV, also discussed below. The First Specialty primary policy also includes a New York forum selection clause providing in part:

> The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law

the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

## FACTS

### A.    The Mt. Hawley Excess Policy

7.     Mt. Hawley issued Commercial Property Policy MCP0170029, effective July 1, 2020 to July 1, 2021, naming Spring Mountain Vineyard, Inc., as insured (the "Mt. Hawley Policy" or the "Policy"). The Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. Coverage under the Policy "attaches excess of the underlying insurance which, in turn, is subject to specific deductibles."

8.     A true and correct certified copy of the Mt. Hawley Policy is attached hereto, marked **Exhibit 1.**

9.     The Mt. Hawley Policy identifies covered properties by reference to a "Schedule of Locations", also known as a "statement of values", that itemizes by location, building, address and other descriptive information each covered commercial structure. The Schedule lists: (i) a winery and office, Victorian, cottage, shop, barn and cave at "Miravelle – 2805 Spring Mountain Road" in St. Helena (Loc. 1, Bldgs. 1-7); (ii) an historic wine building at "Chevalier – 3101 Spring Mountain Road" in St. Helena (Loc. 2, Bldg. 1); (iii) two winery buildings at "Alba – 2849 Spring Mountain Road" in St. Helena (Loc. 3, Bldgs. 3, 4); and a winery at "La Perla – 2820 Spring Mountain Road" in St. Helena (Loc. 5, Bldg. 3). The Schedule includes a per location "Building Limit" representing the maximum recoverable amount for a covered total loss at a scheduled location.

10.    A true and correct copy of the Schedule of Locations signed by SMV President Constantine "Don" Yannias is attached hereto, marked **Exhibit 2.**

11.     The Mt. Hawley Policy includes the following relevant provisions:

1.      **INSURING AGREEMENT**

In consideration of the payment of premium stated in the declarations and subject to the terms and conditions contained in our policy or endorsed hereon, we agree to insure against risks of direct physical loss or damage to covered property per the terms and conditions of the Underlying Insurance Policy listed in Item 3.B. except as excluded herein.

Total Underlying insurance may be provided by a company or companies some of which may have different conditions, limitations and exclusions than the Underlying Insurance Policy. Insurance under this policy is subject to the same conditions, limitations, and exclusions (except as mentioned herein or endorsed onto this policy) as the Underlying Insurance Policy referenced below.

The risk of uncollectibility (in whole or in part) of other insurance, whether because of financial impairment or insolvency of an underlying or other insurer or for any other reason, is expressly retained by the insured and is not in any way or under any circumstances insured or assumed by us.

2.      **LIMITS OF LIABILITY**

Our limit of liability in any one occurrence for loss or damage to Covered Property arising from any one loss or disaster for all coverages and locations insured in this policy combined shall not exceed $10,000,000 part of $10,000,000 excess of $10,000,000. Additionally our limit of liability is subject to separate term aggregate limits as indicated below.

\* \* \*

3.      **UNDERLYING INSURANCE**

A.      **LIMITS**: the total amount of Underlying Insurance is $10,000,000
plus any deductible amount or self-insured retention or similar plan beneath any underlying insurance for all property and coverages combined.

B.      **UNDERLYING INSURANCE POLICY**: the Underlying Insurance Policy referred to herein is provided by:

Policy: ESP 2004861 00
Carrier: First Specialty Insurance Corporation
Eff Date: 07/01/2020
Exp. Date: 07/01/2021

Any revision to the policy shown above and/or other underlying policy(ies) made after the effective date of the Underlying Insurance Policy shall not be binding on this excess insurance without our consent.

**4.    APPLICATION OF UNDERLYING INSURANCE POLICY**

Our policy insures against loss or damage as per the terms and conditions of the "Underlying Insurance Policy" listed in Item 3.B., except that where our provisions and stipulations are more restrictive or contrary to those of the "Underlying Insurance Policy," our policy will supersede.

\* \* \*

**7.    LOSS PAYMENT**

Liability under our policy for our share of the "Ultimate Net Loss" will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the "Ultimate Net Loss." But in no event shall the "Ultimate Net Loss" exceed the less of the following:

**A.**    Actual adjusted amount of loss;

**B.**    Total stated value for the property lost or damaged, as shown on the latest statement of values on file with us;

**C.**    Your financial interest.

**8.    DEFINITION**

"Ultimate Net Loss" means the actual loss or damage sustained by you (including any Deductible or self-insured retention amount) as a direct result of the perils insured against and the coverages provided for in our policy to Covered Property hereunder arising from any one loss or disaster, after making Deductions for salvage, subrogation and recoveries from any source other than our policy and the underlying and excess insurance policies.

\* \* \*

12.     The Limitation of Liability Endorsement (form CPR 2126 (10/01)) in the Mt.

Hawley Policy provides:

The following special terms and conditions apply to this policy:

**A.**     The Limit of Insurance or amount of insurance shown in the Declarations page of this policy is a limit or amount per occurrence, except for "earthquake" and "flood," if covered, where an annual aggregate applies. We will not pay more than this limit or amount in one disaster, casualty, or event, no matter how many locations are involved.

**B.**     The premium for this policy is based on the schedule or statement of values on file with us or attached to this policy. If there is a loss under this policy, we will not pay more than the least of the following:

**1.**     The actual adjusted amount of loss, minus the deductible(s) that applies;

**2.**     The Limit of Insurance or amount of insurance per occurrence shown in the Declarations page of this policy or endorsed onto this policy; or

**3.**     The stated value for the specific property involved in the loss as shown on the latest statement of values on file with us, minus the deductible(s) that applies.

13.     As noted, the Legal Action Conditions Endorsement (form CPR 2311 (04/20)) in

the Mt. Hawley Policy provides:

All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured, and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

**B.**     **The Underlying First Specialty Policy**

14.     First Specialty Insurance Corporation issued Policy ESP 2004867 00, effective July 1, 2020 to July 1, 2021, to SMV ("First Specialty Policy"). Like the Mt. Hawley Policy, Item 2 of the First Specialty Policy Declarations also references the Schedule (Exhibit 2) for an itemization of covered property.

15.     A copy of the First Specialty Policy, as provided by counsel for SMV to Mt. Hawley on September 2, 2021, is attached hereto, marked **Exhibit 3**.

16.     The Building and Personal Property Coverage Form in SMV's First Specialty Policy includes the following relevant provisions:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A.      Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.      Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a.      Building**, meaning the building or structure described in the Declarations, including:

**(1)**     Completed additions;

**(2)**     Fixtures, including outdoor fixtures;

**(3)**     Permanently installed:

(a)     Machinery; and
(b)     Equipment;

**(4)**     Personal property owned by you that is used to maintain or service the building or structure or its premises….

\* \* \*

      **b.**      **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure, or within 100 feet of the premises described in the Declarations, whichever distance is greater:

           (1)    Furniture and fixtures;

           (2)    Machinery and equipment;

                    * * *

           (3)    All other personal property owned by you or used in your business.

                    * * *

**2.**    **Property Not Covered**

Covered Property does not include:

                    * * *

**d.**    Bridges, roadways, walks, patios or other paved surfaces;

                    * * *

**f.**    The cost of excavations, grading, back-filling or filling;

**g.**    Foundations of buildings, structures, machinery or boilers if their foundations are below:

        **(1)**    The lowest basement floor; or

        **(2)**    The surface of the ground, if there is no basement;

**h.**    Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

                    * * *

**k.**    Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.**    Retaining walls that are not part of a building;

**m.**   Underground pipes, flues or drains;

\* \* \*

**q.**   The following property while outside of buildings:

**(1)**   Grain, hay, straw or other crops;

**(2)**   Fences, radio or television antennas (including satellite dishes) and   their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3.**   **Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

17.   The Business Income (And Extra Expense) Coverage Form of the First Specialty Policy provides in part:

**A.**   **Coverage**

**1.**   **Business Income**

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

\* \* \*

**3.**   **Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

18.   The Causes Of Loss – Special Form of the First Specialty Policy provides in part:

**A.      Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

19.      The Miscellaneous Unnamed Locations Coverage Extension Endorsement (form SP 4 79 0710) in the First Specialty Policy provides:

This Policy is hereby extended to insure against loss or damage to Miscellaneous Unnamed Locations as defined below.

**Miscellaneous Unnamed Locations** - Covered Property as insured against by this Policy at any location within the Coverage Territory which is not on described premises or shown on any applicable Schedule of Locations, to the extent of your interest .…

Miscellaneous Unnamed Locations do not include any property insured or excluded under any other item of this Policy or under any other policy issued by us to you. If such property is insured in whole or in part by other insurance, then this Policy shall apply only as excess insurance, and in no event as contributing insurance, and then only after all other insurance has been exhausted.

**Limit of Liability** - Liability for loss under this Miscellaneous Unnamed Locations Coverage Extension Endorsement, arising out of one occurrence, shall not exceed $100,000.

20.      The Commercial Property Conditions of the First Specialty Policy provides in part:

**A.      CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.      This Coverage Part;

2.      The Covered Property;

3.      Your interest in the Covered Property; or

4.      A claim under this Coverage Part.

21.     The Duties And Requirements In The Event Of Loss Or Damage Endorsement (form SP 5 730 1112) in the First Specialty policy places certain duties upon SMV in the event of loss or damage to covered property, including the following:

**Duties and Requirements in The Event of Loss or Damage**

    **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

                      \* \* \*

      (6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records...

                      \* \* \*

      (8)    Cooperate with us in the investigation or settlement of the claim.

    **b.**    You, as often as may be reasonably required, shall:

                      \* \* \*

      (2)    Submit to examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and subscribe the same.

      (3)    Present and require any of your officers, directors, investors, managers, employees, public adjuster, experts, consultants, contractors or any other representative relating to the loss or damage, for examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and require they subscribe the same.

                      \* \* \*

      (4)    Produce for examination:

          (a)    All books of account;
          (b)    Bills, invoices and other vouchers, or certified copies thereof if originals be lost.

                      \* \* \*

C.    **The Wildfire and SMV's Fire Loss Claim**

22.    SMV's properties are principally comprised of four wineries: (1) Miravelle Ranch; (2) Chateau Chevalier Ranch; (3) La Perla Ranch; and (4) Alba Ranch.

23.    On September 27, 2020, the Glass Fire broke out in Napa County, California, damaging portions of SMV's properties.

24.    On or about September 30, 2021, SMV gave notice of its claim under the Mt. Hawley Policy. Thereafter, SMV's New York based attorneys — Cohen Tauber Spievack & Wagner, P.C. ("CTSW") — with the assistance of SMV's California-based public adjuster, The Greenspan Co. ("Greenspan"), has pursued SMV's claims under the Mt. Hawley Policy and its other property policies for the losses arising from the Glass Fire.

25.    The property insurers including Mt. Hawley retained independent adjuster McLarens to assist in the factual investigation of SMV's property insurance claim. McLarens' role and conduct was to gather facts, information and documentation relating to the claimed losses, including the retention of consultants as appropriate to evaluate particular aspects of the claim. As part of that investigation, McLarens has retained building consultant Young and Associates, developed all documents and information required by Young and Associates to perform its analysis and valuation of SMV's claimed physical losses, coordinated and performed site inspections with Young & Associates, surveyed and documented loss locations, identified and requested documents and other information, retained forensic accounting consultant J.S. Held, solicited SMV's business income claim, attempted to develop all documents and information required by J.S. Held to perform its analysis and valuation of SMV's claimed business income losses, and communicated as needed with Greenspan.

26.     Mt. Hawley has also undertaken its own investigation and analysis of SMV's claims, for the purpose of determining the existence and amount of coverage that might potentially be owed under the terms of the Mt. Hawley Policy. Mt. Hawley has requested information, documentation and the examination under oath ("EUO") of SMV representatives and agents with regard to the claim. On August 5, 2021, Mt. Hawley requested documentation from SMV as well as the EUO of Constantine "Don" Yiannis, SMV's President, who had signed a recently submitted "proof of loss" claiming over $35 million in covered losses. To date, however, SMV has not produced Mr. Yiannis, and SMV replied to Mt. Hawley's recent, renewed requests to examine him by purporting to impose a series of preconditions, including Mt. Hawley's waiver of coverage defenses and pre-payment of a substantial portion of SMV's claims. While withholding Mr. Yannias, the person who signed its proof of loss, SMV has instead offered up a series of individuals who could each testify to only some aspects of SMV's claim.

### D.     The Parties' Claim Correspondence and Coverage Disputes

27.     On July 13, 2021, Tim Larsen (Greenspan) e-mailed McLarens attaching SMV's Proof and Statement of Loss totaling $35,357,883.64, the total sum of all Scheduled values. That correspondence was Mt. Hawley's first notice that SMV's claimed covered losses would implicate Mt. Hawley's layer of excess coverage. Among other things, Mr. Larsen asserted:

a)    That Mt. Hawley and SMV's other insurers "have agreed with SMV's coverage position that the entire claim... is covered";

b)    That "the Insurers [have] agreed to pay the total loss up to the policies $35,565,435 limit regardless of where the damage occurred on the vineyard property";

c)    That the Mt. Hawley Policy affords "blanket coverage for any loss regardless of where it occurred on the vineyard property";

     d)     That "the policies clearly and unambiguously covered the irrigation and trellis systems";

     e)     That all insurers "have, in effect, acknowledged their payment obligations for the repair and/or replacement costs associated with" the irrigation and trellis systems; and

     f)     That Mt. Hawley has breached SMV's insurance contract.

28.     A true and correct copy of Mr. Larsen's July 13, 2021 correspondence (without enclosures), which was forwarded to Mt. Hawley, is attached, marked **Exhibit 4**.

29.     On August 5, 2021, Mt. Hawley rejected each contention, and requested from SMV certain documentation, information and Mr. Yannias's EUO.

30.     A true and correct copy of Mt. Hawley's August 5, 2021 letter is attached, marked **Exhibit 5**.

31.     On August 10, 2021, CTSW wrote counsel for Mt. Hawley proposing that Mr. Larsen and Ms. Seavoy appear for EUOs, among other things.

32.     A true and correct copy of CTSW's August 10, 2021 letter is attached, marked **Exhibit 6**.

33.     On August 23, 2021, Mr. Larsen wrote McLarens on behalf of SMV's other property insurers which also raised issues relating to the Mt. Hawley Policy.

34.     A true and correct copy of Mr. Larsen's August 23, 2021 letter is attached, marked **Exhibit 7**.

35.     On September 29, 2021, Mt. Hawley, through counsel, responded to CTSW's August 10 letter, to Mr. Larsen's August 23 letter, and to other submissions and e-mails received from SMV between August 26 and September 27.

36.     A true and correct copy of Mt. Hawley's September 29, 2021 letter is attached, marked **Exhibit 8**.

37.     By letter dated October 29, 2021, CTSW wrote McLarens with SMV's revised coverage positions. That letter stated (at fns. 2, 3) that SMV had been paid $7,659.534.86 for its fire loss claim, and asserted the following:

      a)     That its 2020-21 property policies (including the Mt. Hawley policy) afford blanket coverage despite the policy language based on the Schedule (Exhibit 2);

      b)     That $2,238,744 is owed for total loss of an unscheduled barn used for storage, the "Chevalier Red Barn", that SMV argues was appurtenant to, or serviced, the scheduled Chevalier Historic Wine Building (Exhibit 2, Loc. 2, Bldg. 1);

      c)     That the insurers' $102,745 payment for the partially damaged Miravelle Ranch Shop (Loc. 1, Bldg. 4), a maintenance building, was insufficient and that it actually suffered $578,796 in damage;

      d)     That the insurers' total loss calculations are incorrect because the $500,000 wildfire deductible does not, or should not, apply; and

      e)     That $6,659,726 is owed for the claimed total loss of SMV's vineyard trellis and irrigation systems, which SMV argues qualify as Covered Property under each property policy.

38.     A true and correct copy of CTSW attorney Jay Spievack's October 29, 2021 letter is attached, marked **Exhibit 9**.

39.     Based in part on CTSW's October 29, 2021 letter, Mt. Hawley conducted the Larsen and Seavoy EUOs on November 17 and 18, 2021, and the Meredith and Rosenbrand EUOs on December 14-15, 2021. Mt. Hawley has also pursued all outstanding documents and information requested but not produced by SMV, a continued examination of former controller Jim Meredith and SMV's current controller (if needed), and the EUO of Mr. Yannias.

40.     By letter dated November 30, 2021, Mt. Hawley requested the EUOs of Mr. Meredith and Mr. Rosenbrand, to occur before December 23.

41.     A true and correct copy of Mt. Hawley's November 30, 2021 letter is attached, marked **Exhibit 10**.

42.     By letter dated December 2, 2021, Mt. Hawley requested by category the documents and information identified and discussed during the Larsen and Seavoy EUOs that SMV had not produced.

43.     A true and correct copy of Mt. Hawley's December 2, 2021 letter is attached, marked **Exhibit 11**.

44.     By letter dated December 22, 2021, Mt. Hawley requested by category the documents and information identified and discussed during the Meredith and Rosenbrand EUOs that SMV had not produced.

45.     A true and correct copy of Mt. Hawley's December 22, 2021 letter is attached, marked **Exhibit 12**.

46.     By letter dated January 12, 2022, CTSW revised SMV's claim downward to $29,153,414.20 and demanded that Mt. Hawley pay its $10 million limit of liability within 30 days. At Footnote 11, SMV noted that the "2020-21 Property Policies provide that a New York state or federal court must resolve all coverage disputes and must apply New York law". To the

extent Mt. Hawley understands it, that letter also seems to argue, among other things, that the Mt. Hawley Policy independently obligates Mt. Hawley to pay $4.8 million for SMV's total loss of the La Perla Winery (Exhibit 2, Loc. 5, Bldg. 3) even though the Mt. Hawley Policy follows form, in relevant part, to the primary First Specialty Policy and the $4.8 million Building Limit for the La Perla Winery was already fully paid by First Specialty under its policy.

47. A true and correct copy of CSTW's January 12, 2022 demand letter is attached, marked **Exhibit 13**.

48. On February 1, 2022, Mt. Hawley replied again confirming that its investigation was ongoing and that it would render a coverage determination upon its conclusion. That letter also renewed Mt. Hawley's requests for information and solicited dates for Mr. Yannias's EUO.

49. A true and correct copy of Mt. Hawley's February 1, 2022 letter to CTSW is attached, marked **Exhibit 14**.

50. CTSW responded by letter dated February 8, 2022. To the extent Mt. Hawley understands it, and among other things, CTSW argues that "SMV has complied with its obligations" under the Mt. Hawley Policy, that Mt. Hawley "has more than enough information to make a coverage determination", and that Mt. Hawley's outstanding EUO requests are "premature" and must be limited.

51. A true and correct copy of CTSW's February 8, 2022 letter is attached, marked **Exhibit 15**.

52. In response, on March 7, 2022, Mt. Hawley itemized what documents remain outstanding (mostly financial), advised again that it would reconvene Mr. Meredith's examination on financial issues once all documents were received, rejected SMV's unsupported attempt to limit the scope of Mr. Yannias's examination and again solicited dates for it.

53.    A true and correct copy of Mt. Hawley's March 7, 2022 letter to CTSW is attached, marked **Exhibit 16**.

54.    CTSW responded by letter dated March 23, 2022. To the extent Mt. Hawley understands it, SMV again argues that Mt. Hawley is obligated to pay $4.8 million for SMV's loss of the La Perla Winery (despite that Building Limit being already paid by the underlying insurers), and demands that Mt. Hawley immediately pay $525,000 for damage to the Alba Ranch and another $3,176,009 for "all purported resolved items" identified by other insurers. SMV also pre-conditioned the performance of its duties under the Mt. Hawley Policy, including making Mr. Yannias available for an EUO, on two new requirements set forth nowhere in the parties' insurance contract: (a) Mt. Hawley's admission that its "purported liability limitation provisions only limit [its] own respective policy liability for covered loss and damage to the amount indicated on SMV's Statement of Values"; and (ii) Mt. Hawley's payment of SMV's "undisputed loss and damages due to the Glass Fire within the next 30-days."

55.    A true and correct copy of CTSW's March 23, 2022 letter is attached, marked **Exhibit 17**.

56.    On April 8, 2022, Mt. Hawley responded to CTSW's March 23 letter and set Mr. Yannias's EUO for May 12, 2022 in Chicago, Illinois, where Mr. Yannias works.

57.    A true and correct copy of Mt. Hawley's April 8, 2022 letter to CTSW is attached, marked **Exhibit 18**.

58.    SMV thereafter reaffirmed and reiterated its refusal to present Mr. Yannias for an EUO.

59.    Mt. Hawley has diligently attempted to complete its coverage investigation. SMV, however, has taken positions concerning the claim and insurance coverage for it, including

attempting to impose baseless conditions on Mt. Hawley's investigative rights, that have effectively prevented Mt. Hawley from completing that investigation. Those changing coverage positions also illustrate the controversies that currently exists between SMV and Mt. Hawley over insurance coverage under the Mt. Hawley Policy for any part of SMV's claimed losses arising from the Glass Fire. Finally, SMV has demanded that Mt. Hawley pay millions of dollars immediately on this claimed loss, notwithstanding the non-exhaustion of the underlying insurance, the ongoing investigation, and the substantial coverage defenses that have been reserved.

       E.      **<u>SMV's Lawsuit In California</u>**

      60.      On March 21, 2022, in response to Mt. Hawley's March 7, 2022 letter requesting the EUO of Mr. Yiannis, SMV instead filed and served a lawsuit against Mt. Hawley, captioned Spring Mountain Vineyards, Inc. v. Landmark American Insurance Company, et al., Napa County Superior Court Case 22CV000270 ("California Action"). The Complaint in the California Action asserts against Mt. Hawley and others causes of action for declaratory relief (Counts 1, 4), breach of contract (Counts 2, 3), breach of the implied covenant (Count 5) and negligent misrepresentation (Count 6).

      61.      As SMV recognized as recently as CTSW's January 12, 2022 demand letter, "[t]he 2020-21 Property Policies provide that a New York state or federal court must resolve all coverage disputes and must apply New York law." (See Exhibit 13 at 5-6, fn. 11.) Because SMV filed the California Action in violation of the forum selection clauses in the Mt. Hawley Policy and the underlying First Specialty Policy, Mt. Hawley will move to dismiss the California Action.

      62.      Pursuant to the forum selection clauses in the Mt. Hawley Policy and the First Specialty Policy, Mt. Hawley elects to proceed in this forum for judicial declarations that resolve all controversies with SMV over the rights and duties of the parties under the Mt. Hawley Policy.

## <u>FIRST CLAIM FOR DECLARATORY RELIEF</u>
### (Noncompliance With Conditions Of Coverage)

63.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 62, above, as though fully set forth herein.

64.     The Mt. Hawley Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. The Duties And Requirements In The Event Of Loss Or Damage Endorsement (form SP 5 730 1112) attached to the First Specialty Policy places duties upon SMV in the event of loss or damage to covered property, including:

    **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

            * * *

    (6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records...

            * * *

    (8)    Cooperate with us in the investigation or settlement of the claim.

    **b.**    You, as often as may be reasonably required, shall:

            * * *

    (2)    Submit to examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and subscribe the same.

    (3)    Present and require any of your officers, directors, investors, managers, employees, public adjuster, experts, consultants, contractors or any other representative relating to the loss or damage, for examinations under oath by any person named by us, while not in the presence of any other person that might be subject to such an examination, and require they subscribe the same.

* * *

    (4)    Produce for examination:

        (a)    All books of account;
        (b)    Bills, invoices and other vouchers, or certified copies thereof if originals be lost;

    At such reasonable time and place as may be designated by us or our representative, and shall permit extracts and copies thereof to be made by us.

65.     On August 5, 2021, Mt. Hawley requested all documents supporting SMV's claim and the examination of SMV President Constantine "Don" Yannias. (Exhibit 5.) Despite Mt. Hawley's repeated requests, SMV has declined to make Mr. Yannias available for examination. By March 23, 2022 letter from CTSW, SMV also conditioned making Mr. Yannias available for examination on Mt. Hawley admitting that its "purported liability limitation provisions only limit [its] own respective policy liability for covered loss and damage to the amount indicated on SMV's Statement of Values", and paying millions that SMV claims is covered loss and damages due to the Glass Fire. (*See* Exhibit 17.) CTSW's March 23, 2022 letter also advises that SMV will not produce to Mt. Hawley that which accounting consultant J.S. Held requested on behalf of all insurers, incorrectly positing that "Mt. Hawley did not request documents regarding SMV's business loss income claim". (*Id.*) SMV has thus breached its duties in the event of loss or damage owed to Mt. Hawley by failing and refusing to cooperate, produce (without condition) Don Yannias for examination under oath, and to produce all documents supporting its claim. SMV's failure to satisfy all preconditions to coverage under the Mt. Hawley Policy is not excused or justified and it has effectively prevented Mt. Hawley from completing its investigation.

66.     Mt. Hawley is informed and believes and thereon alleges that SMV disputes these contentions, and instead contends that it has fully complied with all duties in the event of loss and damage under the First Specialty Policy. Indeed, SMV contends that Mt. Hawley must

immediately pay it millions of dollars and ultimately pay it $10 million, notwithstanding the policy conditions or the substantial coverage issues that have been reserved.

67.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy.

68.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that SMV has breached the Duties And Requirements In The Event Of Loss Or Damage provisions of the First Specialty Policy to which the Mt. Hawley follows form, in relevant part.

## SECOND CLAIM FOR DECLARATORY RELIEF
### (No Exhaustion Of Underlying Limits)

69.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 68, above, as though fully set forth herein.

70.     The Declarations Page of the Mt. Hawley Policy provides that "Coverage under this policy attaches excess of the underlying insurance which, in turn, is subject to specific deductibles." Section 7 states "Liability under our policy for our share of the 'Ultimate Net Loss' will not attach until the underlying insurer(s) have paid, admitted liability for, or have been held legally liable for the full amount of their respective participations of the 'Ultimate Net Loss.'" Section 2 further provides "Our limit of liability in any one occurrence for loss or damage to Covered Property arising from any one loss or disaster... shall not exceed" $10 million excess of $10 million.

71.     Mt. Hawley is informed and believes, and on that basis alleges that First Specialty and Lloyds have collectively paid their $5 million limit of liability to SMV for losses arising from the Glass Fire. Mt. Hawley is also informed and believes that Kinsale and Landmark have paid SMV $2,695,534 under their first layer excess property policies for SMV's losses arising from the

Glass Fire; bringing SMV's total property insurance recovery for the Glass Fire to $7,659.534. Approximately $2.34 million of the liability limits of the Kinsale and Landmark first layer excess policies, however, remain unpaid and available to SMV should it prove added sums in covered loss are owing. Unless and until the full $5 million combined limit of liability of the Kinsale and Landmark first layer excess policies are paid in covered loss, the coverage condition under the Mt. Hawley Policy that all underlying insurance first be exhausted remains unsatisfied. For this reason, the Mt. Hawley policy is not presently implicated or obligated to satisfy any additional, uncompensated covered loss SMV may prove arose from the Glass Fire.

72.     Mt. Hawley is informed and believes and thereon alleges that SMV disputes these contentions, and instead contends that it has sustained covered losses in excess of the combined limits of liability of the underlying property policies issued by First Specialty, Lloyd's, Kinsale, Landmark, the Mt. Hawley, and the excess insurers above Mt. Hawley's second layer excess policy. Indeed, SMV contends that Mt. Hawley must immediately pay it millions of dollars and ultimately pay it $10 million, notwithstanding the policy conditions or the substantial coverage issues that have been reserved.

73.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy.

74.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that the Mt. Hawley Policy's exhaustion requirement has not been satisfied and, as a result, Mt. Hawley has no present obligation to pay any sum for additional items of covered loss or damage for which SMV has not already been paid.

**(In The Alternative)**
**THIRD CLAIM FOR DECLARATORY RELIEF**
**(Coverage Issues Bar Or Limit Recovery)**

75.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 74, above, as though fully set forth herein. This Claim for Relief is pled in the alternative to the first two, in that, if it is adjudicated that SMV has not complied with the conditions of coverage or that the underlying insurance has not exhausted, then determination of the remaining, disputed coverage provisions is unnecessary.

76.     The Mt. Hawley Policy insures against risks of direct physical loss or damage to covered property according to its terms and conditions, and according to the terms and conditions of First Specialty's underlying primary policy. The Mt. Hawley Insuring Agreement provides that "subject to the terms and conditions contained in our policy or endorsed hereon, we agree to insure against risks of direct physical loss or damage to covered property per the terms and conditions of the Underlying Insurance Policy... except as excluded herein." Exhibit 1 at p.5, Section 1. Section 4 provides that the Mt. Hawley Policy "insures against loss or damage as per the terms and conditions of the [First Specialty]... except that where our provisions and stipulations are more restrictive or contrary to those of the 'Underlying Insurance Policy,' our policy will supersede." The Limitation of Liability Endorsement in the Mt. Hawley Policy makes clear that "The premium for this policy is based on the schedule or statement of values... If there is a loss under this policy, we will not pay more than the least of the following: **1.** The actual adjusted amount of loss, minus the deductible(s) that applies; **2.** The Limit of Insurance or amount of insurance per occurrence...; or **3.** The stated value for the specific property involved in the loss as shown on the latest statement of values..."

77.     Mt. Hawley has reserved its rights and identified a number of substantive coverage issues with regard to SMV's claims and in response to SMV's stated positions under the Policy.

The parties dispute, *inter alia*, (1) whether SMV's coverage for each scheduled building is limited to the scheduled value for the building; (2) whether unscheduled buildings or other unscheduled property is covered; (3) whether SMV's claims for damage to its trellises and irrigation system are covered (and if so in what amount); and (4) whether any other limitations and exclusions from the Policy apply to bar or limit SMV's recovery.

78.     SMV contends that notwithstanding these coverage issues and limitations, Mt. Hawley must immediately pay it millions of dollars and ultimately pay it $10 million.

79.     By virtue of the foregoing, there presents a justiciable controversy between Mt. Hawley and SMV regarding the availability of coverage for the Glass Fire under the Mt. Hawley Policy and the extent, if any, of any such coverage.

80.     Mt. Hawley seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that SMV has not demonstrated an amount of covered loss that would result in coverage under the Mt. Hawley Policy, and/or that exclusions to coverage or limitations of liability apply that would limit the recovery of amounts claimed by SMV.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mt. Hawley Insurance Company respectfully prays for relief as follows:

a)     On its First Claim for Relief, for an adjudication that SMV has breached the Conditions of coverage under the Mt. Hawley Policy, barring coverage for its claim;

b)     On its Second Claim for Relief, for an adjudication that the Mt. Hawley Policy requirement that all Underlying Insurance first be exhausted through payment of covered loss has not been satisfied and that, unless and until all underlying insurance limits of liability are properly exhausted, Mt. Hawley has no obligation to pay;

c)      On its Third Claim for Relief, that SMV has not established its entitlement to

payment as to any covered loss under the terms and conditions of the Mt. Hawley Policy; and

d)      For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      April 19, 2022

**CHARTWELL LAW**

By:_____
    Matthew Kraus, Esq. (MK0621)
One Battery Park Plaza, Suite 710
New York, NY 10004
mkraus@chartwell.com
Telephone: (212) 785-0757

**PROUGH LAW, APC**
Michael D. Prough, Esq. (pro hac vice pending)
Dean C. Burnick, Esq. (pro hac vice pending)
1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596
mdp@proughlaw.com
dcb@proughlaw.com
Telephone: (925) 433-5894

*Attorneys for Plaintiff*
*Mt. Hawley Insurance Company*