# EXHIBIT A

# (part 6 of 6)

# EXHIBIT 11

**From:** Jamie Yaudes <Jamie_Yaudes@AJG.com>
**Sent:** Friday, October 2, 2020 3:45 PM
**To:** 'Mary Seavoy' <mary@bimi.com>; 'Jim Meredith' <jim@springmtn.com>
**Cc:** Dina Smith <Dina_Smith@AJG.com>
**Subject:** Spring Mountain Vineyard Property Policies

The attached policies are being provided to you, at your request, prior to our completed policy review process.  Given the time constraints, we are unable to verify their accuracy at this time. We will check these policies as soon as possible, and confirm to you that they have been checked, and identify any discrepancies.

Please check the below link which will take you to a share file that includes the following policies:

Primary Stock Throughput Policy
Excess Stock Throughput Policy
California Fair Plan policy for 2849 Spring Mountain – separate attachment for the coverage form for this policy
Supplemental to California Fair Plan policy for 2849 Spring Mountain
First Specialty Property - $2.5M Part of $5M Primary
Kinsale Property - $2.5M Part of $5M Excess $5M
Landmark Property - $2.5M Part of $5M Excess $5M

https://ajg.sharefile.com/d-s675bcd3eb384f708

We are stilling waiting to receive the following policies and will forward them to you upon receipt:

Lloyds - $2.5M PO $5M Primary
Mt. Hawley - $10M XS $10M
Hallmark - $5M PO $10M XS $20M
Western World - $5M PO $10M XS $20M
AXIS - $5,565,435 XS $30M

Please let me know if you have any questions.

Sincerely,
**Jamie Yaudes**
Client Service Supervisor | Commercial Insurance


**Gallagher**

Insurance | Risk Management | Consulting

1

SMV 04722

3697 Mt Diablo Blvd, Suite 300, Lafayette, CA  94549
Direct 925.627-8200 | Main 925.299.1112 | Fax 925.299.0328
www.ajg.com | jamie_yaudes@ajg.com
Arthur J Gallagher & Co. Insurance Brokers of California, Inc.
CA License #0726293



Please Note:  Insurance coverage cannot be bound or altered until confirmation is received from a Gallagher representative.

**Please note:**
**I would like to emphasize that the discussion set forth above is only an insurance/risk management perspective and is NOT legal advice. We do not provide legal advice and I highly recommend that you seek the advice of legal counsel in order to become fully apprised of the legal implications related to these issues.**

This message may contain confidential information.  If you are not the addressee or authorized to receive this for the addressee, you should not use, copy, disclose, or take any action based on this message or any information herein.  If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message.  Thank you for your cooperation.

*At Gallagher we are fortunate to remain open through remote work capabilities and are able to respond to our client needs.  Please know we are here and wish everyone to stay healthy and safe during this unprecedented time.*

Please check out the **Gallagher Pandemic Website,** which is being regularly updated: https://www.ajg.com/us/pandemic-preparedness/

Additionally, Gallagher has resources located here for additional support and information:

https://www.ajg.com/us/news-and-insights/2020/mar/gallagher-discusses-employer-concerns-about-coronavirus-covid-19-pandemic/

https://www.ajg.com/us/news-and-insights/2020/mar/gallagher-report--responding-to-the-coronavirus/

SMV 04723

From: **Jamie Yaudes** <Jamie_Yaudes@ajg.com>
Date: Fri, Oct 2, 2020 at 5:58 PM
Subject: More Spring Mountain Vineyard Property Policies
To: Mary Seavoy <mary@bimi.com>, Jim Meredith <jim@springmtn.com>
Cc: Dina Smith <Dina_Smith@ajg.com>

The below link will take you to a share file which contains the remaining 5 policies that were not included in the share file e-mailed earlier today.

The attached policies are being provided to you, at your request, prior to our completed policy review process. Given the time constraints, we are unable to verify their accuracy at this time. We will check these policies as soon as possible, and confirm to you that they have been checked, and identify any discrepancies.

https://ajg.sharefile.com/d-sb4943ffb862493b9

Between the two share files sent today, you should now have all of the policies providing the main property coverage covering structures, business personal property and business income and the two Stock Throughput policies which cover the stock.

The only property policies that we have not yet provided are the DIC policies (Earthquake and Flood) for structures, business personal property and business income.

Please let me know if you have any questions.

Sincerely,

**Jamie Yaudes**

Client Service Supervisor | Commercial Insurance



3697 Mt Diablo Blvd, Suite 300, Lafayette, CA 94549

Direct 925.627-8200 | Main 925.299.1112 | Fax 925.299.0328

1

SMV 04724

www.ajg.com | jamie_yaudes@ajg.com
Arthur J Gallagher & Co. Insurance Brokers of California, Inc.
CA License #0726293



Please Note: Insurance coverage cannot be bound or altered until confirmation is received from a Gallagher representative.

Please note:

I would like to emphasize that the discussion set forth above is only an insurance/risk management perspective and is NOT legal advice. We do not provide legal advice and I highly recommend that you seek the advice of legal counsel in order to become fully apprised of the legal implications related to these issues.

This message may contain confidential information. If you are not the addressee or authorized to receive this for the addressee, you should not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.

> *At Gallagher we are fortunate to remain open through remote work capabilities and are able to respond to our client needs. Please know we are here and wish everyone to stay healthy and safe during this unprecedented time.*

Please check out the **Gallagher Pandemic Website**, which is being regularly updated: https://www.ajg.com/us/pandemic-preparedness/

Additionally, Gallagher has resources located here for additional support and information:

https://www.ajg.com/us/news-and-insights/2020/mar/gallagher-discusses-employer-concerns-about-coronavirus-covid-19-pandemic/

https://www.ajg.com/us/news-and-insights/2020/mar/gallagher-report--responding-to-the-coronavirus/

SMV 04725

# EXHIBIT 12

| From: | Tim Larsen |
|---|---|
| Sent: | Wednesday, October 14, 2020 8:36 PM |
| To: | Steve Bluemel |
| Cc: | jim@springmtn.com; Chris Glenister; JD Franco |
| Subject: | RE: Spring Mountain |

| Importance: | High |
|---|---|

| Follow Up Flag: | Follow up |
|---|---|
| Flag Status: | Flagged |

Steve,

Thank you for taking the time to meet with me and Spring Mountain team today. A lot was discussed, but for purposes of this e-mail I will keep it brief.

**I. Advance Payment -**

As discussed our request was for $7,000,000.00 against the buildings and BPP. We understand that you must go to the carriers and request said advance. As cash is very tight for the insured, if it makes it easier for you and it will expedite the process, we suggested a two tier advance with $500,000.00 as the minimum, the remaining request can be advanced at a later time. Please let us know how your conversations go with the carriers so we can forecast our cash flow.

**II, Trellis - Drip System -**

During our discussion you asked for a ball park figure for repairs to the 200 + acres of trellis and drip system. As we understand that you have been instructed to adjust this loss based on a Statement of Values I am giving you a breakdown of the acreage of vineyards for your records:

A. 2805 Mountain Spring - 45 Acres,
B. 2849 - 10 Acres,
C. 2820 - 126 Acres,
D. 3101 - 44 Acres.

Please know that we believe the costs associated with the repairs, per acre, is $20,000.00, this includes labor, and material for trellis wire and drip systems. Please know this is only an estimate and we reserve our right to amend our estimate as more information is made available.

**III. Other Structures - Insured Locations -**

Per our conversation we understand, per the Statement of Values you had today, the carriers are taking the position that if it is not a structure listed/detailed on the Statement of Values it is not something the carriers will consider indemnity for. Pursuant to our discussion please know we are reviewing the four corners of the policy concerning the carriers' coverage position. Nevertheless, our preliminary review of the policy suggests there is coverage. Accordingly, we will be making claim for all structures associated/supporting the insured locations listed on the Statement of Values you had today.

**IV. Cleaning/Abatement -**

In discussing the cleaning of the structures, in particular the: A. Victorian Mansion, B. Cave, C. Office Building, D. Chevalier, E. Tasting Room, and F. Green House we will be engaging a restoration company to provide us with an

1



Exhibit

Exhibit No: 15
Name:
Date: 11-17-21
ESQUIRE

GS 01704

estimate for the cleaning. Before any work commences we will provide you with the estimate for review, approval and payment.

**V. Building Consultant -**

I understand that you are going to recommend the retention of a building consultant on behalf of the carriers. Cc'd on this e-mail is our building consultant, JD Franco. Please feel free to connect your building consultant with JD directly.

**VI. Income Documents -**

We understand that you will be sending an RFI concerning the insured's financials. Please send that RFI to me and Chris Glenister, cc'd on this e-mail. Mr. Glenister is the CPA that will be putting the Loss of Income/Extra Expense claims together for the insured.

**Please note the insured reserves any and all rights that it has under the policy, and the law concerning this claim. Nothing in this e-mail or during our discussions/communications should be construed as a waiver of those rights.**

In closing if I missed anything, or mischaracterized anything that you said today please let me know. **We look forward to hearing from you concerning the advance request.**

Thank you,

Tim Larsen
Executive General Adjuster
tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

Visit us on the web at www.greenspan-ai.com

**This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.**

-----Original Message-----
From: Steve Bluemel [mailto:steve.bluemel@Mclarens.com]
Sent: Sunday, October 11, 2020 10:05 AM
To: Tim Larsen <tim@greenspan-ai.com>
Subject: RE: Spring Mountain

**You got it**

Steve Bluemel | McLarens
National General Adjuster
Steve.Bluemel@mclarens.com

Galleria Tower, 100 West Broadway, Suite 730 Glendale, California 91210
+1 714.458.9348 | cell

-----Original Message-----
From: Tim Larsen <tim@greenspan-ai.com>
Sent: Sunday, October 11, 2020 6:53 AM
To: Steve Bluemel <steve.bluemel@Mclarens.com>

2

# EXHIBIT 13



October 21, 2020

Sent Via

    Certified Mail - Return Receipt Requested
    Regular Mail
    Email: jim@springmtn.com

Spring Mountain Vineyard Inc
Attention: Good Wine Co, a Delaware Corporation; Chateau Chevalier
2805 Spring Mountain Road
Saint Helena, CA 94574

| | |
|---|---|
| Re: | **Acknowledgement of Claim and Reservation of Rights** |
| Insured: | **Spring Mountain Vineyard Inc Good Wine Co, a Delaware Corporation; Chateau Chevalier** |
| File No.: | **00019665** |
| Excess Insurer: | **Kinsale Insurance Company ("Kinsale")** |
| Excess Policy No: | **0100119912-0 Effective 07/01/2020 TO 07/01/2021** |
| Excess Limits: | **$2,500,000 Part of $5,000,000 Excess of $5,000,000** |

Dear Mr. Meredith:

This letter will acknowledge receipt by Kinsale Insurance Company ("Kinsale") of the above captioned claim which we received via email from Aeriel Parker with Brown & Riding 09/30/2020. This letter is being sent to acknowledge receipt by Kinsale, and to inform you that the Kinsale Policy is excess, meaning it does not attach unless and until the Underlying Insurer(s) have paid their maximum applicable policy limits. Here, the limit under the Kinsale Excess Policy is $2,500,000 Part of $5,000,000 Excess of $5,000,000. According to the information provided, on or about 09/27/2020 you reported damage caused by the "Glass Fire" resulting in business interruption and property loss.

**POLICY**

This claim was reported to the Excess Property Insurance Policy issued by Kinsale, Policy #0100119912-0 effective 07/01/2020 TO 07/01/2021 with limits of liability of $2,500,000 Part of $5,000,000 Excess of $5,000,000 issued to Spring Mountain Vineyard Inc Good Wine Co, a Delaware Corporation; Chateau Chevalier the ("Excess Policy" or "Kinsale Policy") The Kinsale Policy is excess of Swiss Re Excess & Surplus Property First Specialty Insurance Corporation with limits of $2,500,000 Part of $5,000,000, policy # ESP 2004861 00 and Beazley Lloyds Syndicate 2623/623 with limits of $2,500,000 Part of $5,000,000, policy # W2BCE9200101. The deductible is as per the underlying policy Per Occurrence.

Spring Mountain Vineyard Inc
October 21, 2020
Page **2** of **6**

## UNDERLYING INSURANCE

Your attention is directed to Excess Policy Form XPF1001 0110, Excess Property Follow Form Policy Schedule of Underlying Insurance, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS PROPERTY FOLLOW FORM POLICY
# SCHEDULE OF UNDERLYING INSURANCE

## 1. PRIMARY AND UNDERLYING EXCESS INFORMATION:

| PRIMARY COMPANY | POLICY NUMBER | LIMIT | PART OF |
|---|---|---|---|
| Swiss Re Excess & Surplus Property First Specialty Insurance Corporation | ESP 2004861 00 | $2,500,000 | $5,000,000 |
| Beazley Lloyds Syndicate 2623/623 | W2BCE9200101 | $2,500,000 | $5,000,000 |

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

\*\*\*

Your attention is drawn to form XPF0001 0110, Excess Property Insurance (Direct Physical Damage, Following Form), which provides in pertinent part:

# EXCESS PROPERTY INSURANCE
# (DIRECT PHYSICAL DAMAGE, FOLLOWING FORM)

### A. INSURING AGREEMENT:

1. The Company will indemnify the Insured for our share, as shown in Item 1. of the Declarations Page of this Policy , of the Ultimate Net Loss caused by the direct physical loss or damage to Covered Property in excess of the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy, occurring during the policy period. This agreement is subject to the following terms, conditions, and any endorsements to this Policy.

2. **Application Of Underlying Provisions – Follow Form:**
   The coverage or perils insured in this Policy are subject to the terms, conditions, definitions, limitations, exclusions and warranties contained in the policy(ies) of the Primary Insurer(s) as shown in Schedule of Underlying Insurance of this Policy to the extent there is no conflict with this Policy. In the event the terms, conditions, definitions, limitations, exclusions, warranties or any other provisions contained in the Primary and Underlying Excess Insurance as shown in Schedule of Underlying Insurance of this Policy, respectively, are inconsistent or conflict with the

Spring Mountain Vineyard Inc
October 21, 2020
Page 3 of 6

terms of this Policy, this Policy shall apply. Any revision to the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy after the original effective date of said Primary or Underlying Excess Insurance shall not be enforceable or binding on the Company without the express written consent of the Company.

3. **Attachment of Liability:**
   It is expressly agreed that our liability under this Policy shall attach to the Company only after the Primary and Underlying Excess Insurer(s) have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss.

## B. LIMIT OF LIABILITY:

Provided always that the liability of the Company applies only after the Primary Insurer(s) and Underlying Excess Insurers have agreed to pay the full amount of their respective Ultimate Net Loss, then the Company shall be liable to pay our share of the Ultimate Net Loss up to the full amount of the Limit of Liability as specified in Item 1. of the Declarations Page of this Policy. The maximum recovery in any one occurrence for any coverage subject to a sub limit shall be that sub limit provided by the Primary and/or Underlying Excess Insurance. The inclusion of more than one Insured shall not operate to increase the Company's Limit of Liability.

## C. MAINTENANCE OF PRIMARY AND/OR UNDERLYING INSURANCE:

The Insured warrants, and it is a condition precedent to recovery under this Policy, that the policy(ies) and Limits of the Primary insurer(s) and/or Underlying Excess Insurer(s) shall be maintained in full force and effect during the term of this Policy. Failure by the Insured to comply with the foregoing condition shall not invalidate this Policy, but, in the event of such failure, it is agreed that the liability of this Company shall attach in excess of the amounts specified in Item 1. of the Declarations Page of this Policy, irrespective of any defense which the Primary and/or Underlying Excess Insurer(s) may assert because of failure to comply with any condition of its policy(ies), and irrespective of the inability of Primary and/or Underlying Excess Insurer(s) to pay by reason of bankruptcy or insolvency.

## D. EXCESS AND UNCOLLECTIBLE INSURANCE:

The Insurance provided by the Company under this Policy shall always be excess over the maximum per occurrence Limits of Liability provided by the Primary and/or Underlying Excess Insurer(s), (reduced only by erosion of any aggregate Limits of Liability contained therein) and never less than the attachment specified in Item 1. of the Declarations Page of this Policy. In consideration of the premium charged, it is understood and agreed that in the event the underlying Limit of Liability becomes uncollectible or unpaid, in whole or in part, for any reason this insurance will not drop down, take the place of or provide coverage for the underlying Limit of Liability. The Insured must assume the responsibility for any uncollectible underlying Limit of Liability.

## E. DROP DOWN CLAUSE:

In the event of reduction or exhaustion of the Aggregate Limit(s) of the Primary and/or Underlying Excess Insurance as shown Schedule of Underlying Insurance of this Policy, this Policy shall apply in excess of the reduced Aggregate Limit(s), or if such Aggregate Limit(s) is exhausted, this Policy shall apply as Primary or Underlying Excess Insurance.

Spring Mountain Vineyard Inc
October 21, 2020
Page **4** of **6**

The Company shall not be liable for more than the Limits of Liability as specified in Item 1. of the Declarations Page of this Policy and only then for loss in excess of the deductible for the Primary or Underlying Insurer(s).

This provision does not apply to any sub limit(s), additional coverages or extensions of coverage within the Primary and/or Underlying Excess Insurance policies as shown in the Schedule of Underlying Insurance of this Policy. Nothing in this provision shall further modify Item **C. MAINTENANCE OF PRIMARY AND/OR UNDERLYING INSURANCE.**

\*\*\*

**H. DEFINITIONS:**

1. **Ultimate Net Loss** shall mean the actual loss sustained by the Insured as a direct physical result of the peril(s) insured against by the policy(ies) of the Primary and/or Underlying Excess Insurer(s) limited by:
   a. Any sub limits contained within this Policy or the policy(ies) of the Primary and/or Underlying Excess Insurer(s), and
   b. Making deductions for any salvage and recoveries from any source other than this Policy and the policy(ies) of the Primary and/or Underlying Excess Insurer(s).
2. **Occurrence** shall mean any one direct physical loss, disaster or casualty or series of direct physical losses, disasters or casualties arising out of one event which occurs within the policy period and territory. When the term applies to direct physical loss or direct physical losses from the perils of Flood and/or Earth Movement (if it is insured hereunder), one event shall be construed to be all losses arising during a continuous period of 72 hours.
3. **Covered Property** shall mean that property that is insured and not excluded in the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy.
4. **Primary Insurer(s)** shall mean the insurance carrier(s) that issued the Primary Insurance as shown in the Schedule of Underlying Insurance of this Policy.
5. **Underlying Excess Insurer(s)** shall mean the insurance carrier(s) that issued the Underlying Excess Insurance as shown in Schedule of Underlying Insurance of this Policy.

\*\*\*

<u>**RESERVATION OF RIGHTS**</u>

As shown above in the Excess Policy's Insuring Agreement, we will indemnify the Insured for our share, as shown in Item 1. of the Declarations Page of this Policy , of the Ultimate Net Loss caused by the direct physical loss or damage to Covered Property in excess of the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy, occurring during the policy period. Further, the coverage or perils insured in this Policy are subject to the terms, conditions, definitions, limitations, exclusions and warranties contained in the policy(ies) of the Primary Insurer(s) as shown in Schedule of Underlying Insurance of this Policy to the extent there is no conflict with this Policy. In the event the terms, conditions, definitions, limitations, exclusions, warranties or any other provisions contained in the Primary and Underlying Excess Insurance as shown in Schedule of Underlying Insurance of this

Spring Mountain Vineyard Inc
October 21, 2020
Page 5 of 6

Policy, respectively, are inconsistent or conflict with the terms of this Policy, this Policy shall apply. Finally, it is expressly agreed that our liability under this Policy shall attach to the Company only after the Primary and Underlying Excess Insurer(s) have paid or have been held liable to pay the full amount of their Ultimate Net Loss. As such, to the extent coverage for this matter is disclaimed by Swiss Re, Beazley, or the other Primary and Underlying Carriers, coverage would be similarly disclaimed under the Excess Policy pursuant to the Insuring Agreement cited above.

Further, as shown above in the Excess Policy's Limit of Liability, provided always that the liability of the Company applies only after the Primary Insurer(s) and Underlying Excess Insurers have agreed to pay the full amount of their respective Ultimate Net Loss, then the Company shall be liable to pay our share of the Ultimate Net Loss up to the full amount of the Limit of Liability as specified in Item 1. of the Declarations Page of this Policy. Please note that the Kinsale Policy does not attach until after the Primary Insurer(s) and Underlying Excess agree to pay the full amount of their respective Ultimate Net Loss.

Furthermore, as shown above in the Excess Policy's C. Maintenance of Primary and/or Underlying Insurance, the Insured warrants, and it is a condition precedent to recovery under this Policy, that the policy(ies) and Limits of the Primary Insurer(s) and/or Underlying Excess Insurer(s) shall be maintained in full force and effect during the term of this Policy.

Under the Excess Policy's Excess and Uncollectible Insurance, the Insurance provided by the Company under this Policy shall always be excess over the maximum per occurrence Limits of Liability provided by the Primary and/or Underlying Excess Insurer(s), (reduced only by erosion of any aggregate Limits of Liability contained therein) and never less than the attachment specified in Item 1. of the Declarations Page of this Policy. Additionally, under the Excess Policy's Drop Down Clause, in the event of reduction or exhaustion of the Aggregate Limit(s) of the Primary and/or Underlying Excess Insurance as shown Schedule of Underlying Insurance of this Policy, this Policy shall apply in excess of the reduced Aggregate Limit(s), or if such Aggregate Limit(s) is exhausted, this Policy shall apply as Primary or Underlying Excess Insurance. The Company shall not be liable for more than the Limits of Liability as specified in Item 1. of the Declarations Page of this Policy and only then for loss in excess of the deductible for the Primary or Underlying Insurer(s).

## RIGHT TO AMEND

Please be advised that Kinsale is investigating the facts giving rise to this claim in comparison with the terms and conditions of the Policy pursuant to a full reservation of all rights under the Policy and any and all applicable statutes or laws that may apply.  Nothing in this letter should be construed as a waiver or surrender of the terms, limitations, exclusions, conditions or agreements under the Policy. Nor should this letter be considered an exhaustive recitation of all potential coverage issues or provisions of the Policy that might apply. Our decision to reserve our rights is based on the information available to us at this time. Kinsale specifically reserves the right to amend this letter. By this letter, Kinsale does not waive any of its rights nor does it waive any of the terms, conditions, or provisions of the Policy. Kinsale specifically reserves all its rights and remedies under the Policy as well as under statutes and common law.

Spring Mountain Vineyard Inc
October 21, 2020
Page 6 of 6

Kinsale would like to review any information or analysis you wish to provide. If you have knowledge of any additional information or different facts which you believe would alter any of the positions set forth in this letter, please let us know so that information can be considered.

If you have any questions, or additional information you believe is pertinent to your claims, please do not hesitate to contact me at 804-593-3007 or via email at laura.patterson@kinsaleins.com.

Sincerely,

Laura Patterson
Claims Examiner
Kinsale Insurance Company

**Applicable in California**

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

CC:     Brown & Riding - WA
        Attention: Turner Chatterton
        901 5th Ave, Suite 2300
        Seattle, WA 98164
        Sent via Regular Mail

# EXHIBIT 14

| | |
|---|---|
| **From:** | Jay Spievack |
| **Sent:** | Tuesday, November 24, 2020 12:57 PM |
| **To:** | Dina Smith; Tim Larsen; Paul Migdal; 'mary@bimi.com'; jim@springmtn.com; Jamie Yaudes |
| **Cc:** | Linda Pierce |
| **Subject:** | RE: SMV-2020-21 Policy Blanket Coverage |
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Dina Smith | | |
| | Tim Larsen | | |
| | Paul Migdal | | |
| | 'mary@bimi.com' | | |
| | jim@springmtn.com | | |
| | Jamie Yaudes | | |
| | Linda Pierce | | |
| | Jay Spievack | Delivered: 11/24/2020 12:57 PM | Read: 11/24/2020 12:59 PM |
| | Joseph Vann | Delivered: 11/24/2020 12:57 PM | |

Dina,

Per my earlier email, we should reschedule our weekly meeting for later today or tomorrow because we need to discuss the issues raised in your email this morning. For instance, AJG obviously must respond to the self-serving and inaccurate position taken by the carriers and the wholesale broker in relation to SMV's 2020-21 coverage. We should discuss the particulars of that response before AJG send it.

Specifically, AGJ repeatedly has told SMV, Greenspan and CTSW that (i) it prepared SMV's 2020-21 application seeking blanket coverage; (ii) that the 2020-21 application sought the same blanket coverage that SMV had in its 2019-2020 policies; (iii) AJG sent the 2020-21 blanket coverage application to the carriers via the wholesale broker for coverage and premium quotes; and (iv) neither the carriers nor the wholesale broker ever informed AJG or SMV, to AJG's knowledge, that (a) the quotes and coverages were not solely in response to SMV's 2020-21 application base on the blanket coverage sought; or (b) the carriers would "never…offer blanket terms due to the market environment coupled with the risk characteristics and wildfire exposure" during the underwriting of the policies. In other words, regardless of whether or not AJG dealt directly with the carriers, you previously told us that AJG did deal with the carriers (at least through their wholesale broker) and believed that the carriers were providing blanket coverage at all relevant times because no one ever informed AJG that this was not the case, either in writing or otherwise, during the underwriting process. Had AJG been so informed, it would have immediately notified SMV that blanket coverage was not available and you have indicated that AJG never so informed SMV because this was not the case.

==Therefore, we need to discuss how to best convey to the carriers and wholesale broker that SMV and AJG reject their belated, self-serving attempt to wrongfully alter the blanket coverage that they agreed to provide SMV with for the policy period 2020-21.== AJG also needs to inform the carriers and wholesale brokers that the

1



Exhibit

Exhibit No: 19

Name:

Date: 11-17-21

ESQUIRE

SMV 02476

insurance binders and the proposed policies or policy forms currently under review at AJG do not accurately reflect the blanket coverage that the carriers agreed to provide SMV, are rejected, and that SMV and you request that the carriers provide the 2020-21 policies with the blanket coverage and terms and conditions agreed to as reflected in both the insured's 2020-21 application and the insurers' response thereto during the policies' underwriting. Indeed, as you undoubtedly recalled, Mary contacted you on the day before the 2019-20 policies expired and was verbally told by AJG that the coverages for the new policy to be bound was the same as 2019-20 expiring policies, including the blanket coverage for loss or damage.

Please let us know when you are available for our conference call so we can discuss these issues. In the meantime, please call me at 917-497-7348 if you have any questions.

Best regards,
Jay


Jay B. Spievack

C | T | S | W

Cohen Tauber Spievack & Wagner P.C.
*Partners in Your Strategic Vision*
420 Lexington Ave., Suite 2400
New York NY 10170-2499
Direct: (212) 381-8735
Fax: (212) 586-5095
Email: jspievack@ctswlaw.com
www.ctswlaw.com


This communication, including any attachments, is intended solely for the confidential use of the person(s) named above. If you have received this communication in error, please notify the sender immediately and delete/destroy the original. Any reader other than the intended recipient is hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.


**From:** Dina Smith <Dina_Smith@AJG.com>
**Sent:** Tuesday, November 24, 2020 9:03 AM
**To:** Tim Larsen <tim@greenspan-ai.com>; Jay Spievack <jspievack@ctswlaw.com>; Paul Migdal <paul@greenspan-ai.com>; 'mary@blmi.com' <mary@blmi.com>; jim@springmtn; Jamie Yaudes <Jamie_Yaudes@AJG.com>
**Cc:** Linda Pierce <Linda_Pierce@AJG.com>
**Subject:** Cancel Call Today


Good morning!  I am travelling today and thought I could make the call but my flight time changed to 8:45AM PST which regrettably makes this not possible.


We remain in the same position as respects the carrier states they never would have offered blanket terms due to the market environment coupled with the risk characteristics and wildfire exposure.  As you know we did not deal directly with the carrier; the policies were placed through a wholesale broker.  In regards to the damages, I assume estimates to rebuild and repair are in process, can you provide an expected time you expect these to be completed?

2

Also, are the claims with Liberty Mutual moving along?  We checked with the carrier but they referred us to Greenspan.  We want to be sure those are coming along as well.

I regret having to cancel the call today but any questions please send my way.

Take care and wishing everyone a happy Thanksgiving.

**Dina Campana Smith, CIC**

Managing Director | Private Client Services

1255 Battery Street, Suite 450, San Francisco, CA 94111

3697 Mount Diablo Blvd.  Suite 300 | Lafayette, CA 94549

o 925.627.8225 or 707.244.3450 | m 415.658.1370

Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.

License #0726293

Please Note:  Insurance coverage cannot be bound or altered until confirmation is received from a Gallagher representative.

Please note:

Communications concerning this matter, including this email and any attachments, are provided for purposes of insurance/risk management consulting.  Opinions and advice provided by Arthur J. Gallagher & Co. is not intended to be, and should not be construed to be, legal advice.  Please direct any request for legal advice to your attorney.

This message may contain confidential information.  If you are not the addressee or authorized to receive this for the addressee, you should not use, copy, disclose, or take any action based on this message or any information herein.  If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message.  Thank you for your cooperation.

SMV 02478

# EXHIBIT 15



**RSUI Group, Inc.**
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326-1125

Phone   404-260-3697

Email: jholm@rsui.com

March 24, 2021

The Greenspan Co.
C/O Tim Larsen
4900 Oyster Point Blvd. Suite 519
South San Francisco, CA  94080

Delivered Via Electronic Mail:  tim@greenspan-ai.com

RE:   Insured:              Spring Mountain Vineyard, Inc.
      Insurer:             Landmark American Insurance Company
      Policy Number:       LHD425938
      Location(s) of Loss:  3101 Spring Mountain Road
                           2849 Spring Mountain Road
                           2820 Spring Mountain Road
      Nature of Loss:      Wildfire, California
      Date of Loss:        September 27, 2020
      Claim Number:        7030150863

Dear Mr. Larsen:

Landmark American Insurance Company ("Landmark") acknowledges receipt of your claim involving
the captioned loss. Essentially, this loss is over varying degrees of fire damage to multiple buildings and
business personal property owned by Spring Mountain Vineyard, Inc., the insured.

Landmark would like to take this opportunity to briefly identify some of the provisions in the Policy Form
("policy") that may bar, limit, or otherwise affect coverage for the claim. We also encourage you and
Spring Mountain Vineyard, Inc. to review the policy in its entirety. Because the investigation is ongoing,
please understand Landmark may modify or amend this list of applicable policy provisions as we receive
additional information. Landmark reserves the right to rely on all provisions of the Policies and does not
intend to waive any of them by not reciting them here.

The Landmark policy attaches excess of $5,000,000 in underlying coverage, with a $2,500,000 part of
$5,000,000 excess share.

Please refer to the **EXCESS PHYSICAL DAMAGE COVERAGE FORM** (RSG 91002 1116), which
provides:

> **2. LIMIT:**
> Provided always that liability attaches to the Company only after any self-insured
> retention, any primary and underlying deductibles have been applied, and the primary
> and underlying excess insurer(s) have paid or have admitted liability for the full amount of
> their respective **ultimate net loss** liability as set forth in Item 6 of the Schedule and
> designated "Primary and Underlying Excess Limit(s)" and then the limits of the
> Company's liability shall be those set forth in Item 7 of the Schedule under the
> designation "Limit Insured" and the Company shall be liable to pay the **ultimate net loss**
> up to the full amount of such "Limit Insured."

The maximum recovery in any one occurrence for any coverage(s) or peril(s) subject to a sublimit shall be that sublimit provided by the primary and/or underlying excess policy(ies) and in no event shall the Company be liable for any amounts over the sublimit contained within the primary and/or underlying excess policy(ies) for the coverage(s) or peril(s) to which that sublimit applies

"Item '6' and 'Item 7'" in the above paragraph is found in the **EXCESS PHYSICAL DAMAGE SCHEDULE** (RSG 94062 1009), in addition to Item "4" & "5", which provide:

 4. Property Covered:  Building
  Personal Property
  Business Income with Extra Expense other than "Rental Value"

 5. Primary Insurers and Policy Numbers:  First Specialty Insurance Company
  Policy Number: ESP 2004861 00

 6. Primary Limits and Underlying Excess Limits: $5,000,000.per occurrence

 7. Limit Insured: $2,500,000. Part of $5,000,000 per occurrence, subject to conditions of the Scheduled Limit of Liability form

Next, we would like to draw your attention to the **SCHEDULED LIMIT OF LIABILITY** (RSG 91002 11136) endorsement, which provides in pertinent part:

*This Endorsement Changes The Policy. Please Read It Carefully.*

# SCHEDULED LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

# ALL COVERAGE PARTS

It is understood and agreed that the following special terms and conditions apply to this policy:

1.  In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence":

 **a.**  The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits; or

 **b.**  100% of the individually stated value for each scheduled item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits; or

 **c.**  The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy, if, after the application of the limits in **a.** or **b.** above to each scheduled item of coverage which had the loss, the total exceeds such Limit of Liability.

If no value is shown for a scheduled item then there is no coverage for that item. Where the loss or "occurrence" involves more than one insured location or scheduled item of coverage, the liability of the Company for each individually scheduled item of coverage shall be

 *A member of Alleghany Insurance Holdings LLC*

measured separately and on a per scheduled item basis. Nothing herein requires the Company to utilize the same liability limitation measure for all insured scheduled items or insured locations involved in any one "occurrence". The liability limitation measure to be used by the Company shall be the measure providing the least amount of coverage for each scheduled item individually. The Company may have no liability after applying the liability limitation measures, applicable deductibles and primary and underlying excess limits.

2.  Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3.  The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, named storm, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

The underlying policy form issued by First Specialty Insurance Company includes form **OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT** (SP 4 751 0714) which states the following:



A member of Alleghany Insurance Holdings LLC

### *First Specialty Insurance Corporation*

#### OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following is hereby added to the Policy:

#### Occurrence Limit of Liability

It is understood and agreed that the following special terms and conditions apply to this Policy:

1.     The limit of liability of Insurance shown herein or endorsed onto this policy, is the total Program Limit of Liability applicable to each occurrence in respect to all individual insureds or members combined. Notwithstanding any other terms and conditions of this Policy to the contrary, in no event shall the liability of the Company exceed our proportionate program share of this limit or amount irrespective of the number of locations, individual insured's or members involved. Limits of liability are not on a per individual Insured or per member basis but rather apply regardless of the number of locations, individual Insured's or members involved.

    The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event except as specified elsewhere in the policy with regards to flood or earthquake coverage.

    When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, you may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to the covered property occurs and must commence within the policy term.

2.     The premium for this Policy is based upon the Statement of Values on file with us, or attached to this Policy. In the event of loss hereunder, the total Program Limit of Liability, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

    a.     The actual adjusted amount of loss, less applicable deductible(s),

    b.     The total stated value for the property involved, as shown on the latest Statement of Values on file with us, less applicable deductible(s),

    c.     The limit of Liability or Limit of Insurance shown on the face of this Policy or endorsed onto this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

The underlying policy form issued by First Specialty Insurance Company includes form **MISCELLAENOUS UNNAMED LOCATIONS COVERAGE EXTENSION ENDORSEMENT** (SP 4 739 0710) provides as follows:

 *A member of Alleghany Insurance Holdings LLC*

## *First Specialty Insurance Corporation*

MISCELLANEOUS UNNAMED LOCATIONS COVERAGE EXTENSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This Policy is hereby extended to insure against loss or damage to Miscellaneous Unnamed Locations as defined below.

**Miscellaneous Unnamed Locations** - Covered Property as insured against by this Policy at any location within the Coverage Territory which is not on described premises or shown on any applicable Schedule of Locations, to the extent of your interest in. No coverage is provided under this provision on property while in transit or waterborne; nor while on the premises of any exhibition, exposition, fair or trade show.

Miscellaneous Unnamed Locations do not include any property insured or excluded under any other item of this Policy or under any other policy issued by us to you. If such property is insured in whole or in part by other insurance, then this Policy shall apply only as excess insurance, and in no event as contributing insurance, and then only after all other insurance has been exhausted.

**Limit of Liability** - Liability for loss under this Miscellaneous Unnamed Locations Coverage Extension Endorsement, arising out of one occurrence, shall not exceed $100,000.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY SHALL REMAIN UNCHANGED.

The underlying policy form issued by First Specialty Insurance Company also includes form **BUILDING AND PERSONAL PROPRETY COVERAGE FORM** endorsement (C P 00 10 10 12), which provides:

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**2. Property Not Covered**
Covered Property does not include:
**m.** Underground pipes, flues or drains;

The enumeration of the specific policy provisions is not intended to waive any other defenses which are now or which may hereafter become available to Landmark American Insurance Company. The foregoing does not constitute a waiver of any term or condition of the policy or of any rights and defenses under the policy and Landmark American Insurance Company expressly reserves all of our rights and defenses under the policy.

Notwithstanding the foregoing, no past or future actions taken by Landmark American Insurance Company or their representatives, in connection with this claim shall be deemed or construed as an admission of coverage under the policy issued by Landmark American Insurance Company, a waiver of any right to disclaim coverage under the policy for any reason, or be deemed an expansion of any duties

 *A member of Alleghany Insurance Holdings LLC*

owed. Landmark American Insurance Company accordingly reserves the right to assert any policy provisions and defenses which may be applicable to any claim that may be presented and disclaim coverage as deemed appropriate.

Landmark American Insurance Company further reserves the right to amend or modify its position regarding coverage as necessary upon receipt of additional information. Please be advised that the coverages referenced in this letter may not be exhaustive and nothing contained herein should be construed as a waiver of any term, condition or provision of the Landmark American Insurance Company Policy. All rights available under the Landmark American Insurance Company Policy and applicable law are reserved whether or not specifically referenced herein.

As we continue to investigate this loss, should you have any questions or other information that has relevance to our consideration of your claim, please contact me.

Sincerely,

Jonna Holm
AVP Property Claims
RSUI Group, Inc.


Cc:

Mike Vadney, McLarens
Email: Mike.Vadney@mclarens.com

Jim Meredith, Spring Mount Vineyard
Email: Jim@springmtn.com

Jamie Yaudes, Gallagher Insurance
Email: jamie_qaudes@ajg.com

Turner Chatterton, Brown & Riding
Email: Ctchatterton@brcins.com



A member of Alleghany Insurance Holdings LLC

Kinsale Insurance
2221 Edward Holland Drive
Suite 600
Richmond VA 23230



USPS CERTIFIED MAIL

9214 8901 4298 0456 6247 07



Good Wine Co, a Delaware Corporation; Chateau Chevalier
Spring Mountain Vineyard Inc
2805 Spring Mountain Road
Saint Helena CA 94574



# See Important Information Enclosed

# EXHIBIT 16



**From:** Tim Larsen <tim@greenspan-ai.com>
**Sent:** Tuesday, July 13, 2021 6:23 AM
**To:** Mike Vadney <mike.vadney@mclarens.com>
**Cc:** Jay Spievack <jspievack@ctswlaw.com>
**Subject:** Spring Mountain Winery
**Importance:** High

Michael,

Attached is Spring Mountain Vineyard's ("SMV") Proof and Statement of Loss. This email also addresses your March 22, 2021 email below.

> "-----Original Message-----
> **From:** Mike Vadney [mailto:mike.vadney@mclarens.com]
> **Sent:** Monday, March 22, 2021 10:26 AM
> **To:** Tim Larsen <tim@greenspan-ai.com>
> **Subject:** RE: Spring Mountain Vineyard - McLarens File No.: 001.024327 ml
>
> Tim:
>
> Please find the attached Proof of Loss, Statement of Loss and Statement of Values for the Subject claim. We ask you to please have an officer of the Corporation sign the Proof of Loss in the presence of a Notary Public and return to the Undersigned via email in pdf.
>
> We also advise you the Insurers' are preparing a formal response to your Building definition question along with the Unnamed locations.
>
> Thanks Time and as always, feel free to call me at 714/747-0532.
>
> This email and attachments are intended as an explanation of the handling of this claim and does not waive the rights of any party under the terms, conditions and/or provisions of the policy of Insurance or applicable law.
>
> Mike Vadney | McLarens
> Vice President | Senior Executive General Adjuster mike.vadney@mclarens.com
>
> Galleria Tower, 100 West Broadway, Suite 730 Glendale, California 91210
> +1 714.747.0532 | cell
> +1 818.265.0277 | office"

As you will see from the Statement of Loss, SMV's total loss and damage suffered due to the September 27, 2020 fire claim totals $35,357,883.64. Apply the insurers' advance payments and the deductible, the total amount that the insurers still owe SMV pursuant to the policies is $27,849,027.80 which is set forth in SMV's Proof of Loss. We would appreciate if you would arrange for the carriers to each pay their total share of the amount due to SMV because its loss and damage suffered at the property within 30-days of your receipt of this email.

In your March 22 email above, you indicated that the carriers would provide a formal response to SMV's Building definition question along with the unnamed locations. However, the Insurers still have not provided any formal coverage response almost three months later which must means that insurers have agreed with SMV's coverage position that the entire claim (as set forth in the attached Proof of Loss and the earlier Proofs of

Exhibit No: 7
Name:
Date: 11-17-21
ESQUIRE

Loss) is covered.  Indeed, you also indicated long ago that the insurers would provide a full coverage position, but they still have not sent their insured any such coverage letter almost nine months after this claim was made.  As you are undoubtedly aware, most insurance regulations and state law (including New York) require insurers to inform their policyholders of their coverage position in a timely fashion and their failure to do so violates both an insurer's duty of good faith and fair dealing and numerous insurance regulations.  In our view, the failure of the insurers to provide their coverage position also is unconscionable, particularly given that they have been aware of this claims magnitude for almost ten months now.

In this regard, the insurers also have not challenged SMV's position that policies cover loss and damage to the trellis and irrigation systems which totals in excess of $5.6 million.  In my February 17 email, SMV noted the policies clearly and unambiguously covered the irrigation and trellis systems because these systems are permanent fixtures of the real property as defined in the insuring agreement.  Here too, the insurers never contested this point and so have, in effect, acknowledged their payment obligations for the repair and/or replacement costs associated with these systems.

Lastly, the insurers know that policies only used the Statement of Values chart for the calculation of 2020/21 premiums and to establish the $35,565,435 blanket coverage available to pay and/or reimburse repair and replacement property damage and loss costs.  This was made clear in SMV's 2020/21 application.  Additionally, on or before July 1,2020, the broker clearly told SMV that all of the insurers had agreed to and did provide blanket coverage for any loss regardless of where it occurred on the vineyard property.  AJ Gallagher also told SMV, our firm and SMV's counsel that the insurers confirmed, after the September 27 claim was made, that they had, in fact, agreed to provide blanket property loss coverage up to the $35 million plus limit before July 1. 2020 renewal date.  In your purported Statement of Loss submitted with your March 22 email, you incorrectly equate the claim and the statement of value.  Therefore, your Statement of Loss chart does not accurately reflect that the Insurers agreed to pay the total loss up to the policies $35,565,435 limit regardless of where the damage occurred on the vineyard property.

In sum, SMV requests that the insurers each pay their total share of the amount due to SMV because of its loss and damages suffered at the property with 30-days.  We also request that the insurers or you provide us with any questions or comments within 14 days after the receipt of this email.  I have copied SMV's coverage counsel, Jay Spievack, on this email.  Please let us both know if you have any questions.

Best regards,


**Tim Larsen**
Executive General Adjuster
tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

 

Visit us on the web at www.greenspan-ai.com

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

PRIVACY STATEMENT: We are required to capture and process personal information supplied to us in the fulfilment of our services. Our obligations vary depending on the jurisdiction involved. For further details as to how this information is used, kept secure and your rights, please see the relevant Privacy Statement on our website
– https://www.mclarens.com/privacy-policy/

## SWORN STATEMENT IN PARTIAL PROOF OF LOSS

| ESP 2004861 00 | | See Below* |
|---|---|---|
| (POLICY NUMBER) | | Carriers |
| See Below* | | 001.024327.MI |
| (POLICY AT TIME OF LOSS) | | McLaren File Number |
| 7/1/2020 | | September 27, 2021 |
| (Date of Inception) | | Date of Loss |
| 7/1/2021 | | Arthur J Gallagher |
| (Date of Expiration) | | Broker |

At time of loss, by the above indicated policy of insurance you insured: Spring Mountain Vineyard Inc.

Against loss by **All Risk** to the property described according to the terms and conditions of the said policy and all forms,

1. **Time and Origin:** An insurable loss occurred on **September 27, 2020**. The cause and origin of the said loss were: **Fire**

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose whatever: Winery

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was **Owner**. No other person or persons had any interest therein or incumbrance thereon, except: MGG California LLC, as Collateral Agent.

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: **None.**

5. **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, as described more fully in the declaration page of the policies See Below*

| | | |
|---|---|---|
| 6. The Actual Cash Value of said property at the time of the loss was: | | Undetermined at this time |
| 7. The Loss and Damage to Building: | | $35,357,883.64** |
| 8. The Loss due to Business Interruption: | | TBD |
| 9. The Amount Claimed under the above numbered policy is: | = | $35,357,883.64 |
| 10. Less Amount of Deferment / Holdback | - | N/A |
| 11. Actual Cash Value of Loss: | | TBD |
| 12. Less Amount of Deductible: | - | TBD |
| 13. Advance Payment | - | $7,508,855.85 |
| 14. Net Remaining Balance including Withheld Depreciation | = | $27,849,027.80 |

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this Proof of Loss by the insured is not a waiver of any of its rights it may have under the policy or at law.

State of ILLINOIS

County of COOK

Insured



PRESIDENT
SPRING MOUNTAIN
VINEYARD INC

Subscribed and sworn before me this ___12TH___ day of ___JULY___ 20 21

_____ Notary Public   My commission Expires 6/12/2022

*Landmark Insurance Company, Policy Number: LHD425938, Claim Number: 7030150863  Kinsale Insurance Company, Policy Number: 10
First Specialty Insurance Company, Policy Number ESP2004861 00, Claim Number 20201448295 Lloyds Policy Number W2BCE9200101,
**See attached spreadsheet for a breakdown of the claim and its accompanying documentation

CHRISTINE SERDAR
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
June 12, 2022

# EXHIBIT 17

## Jay Spievack

| | |
|---|---|
| **From:** | Jay Spievack |
| **Sent:** | Monday, September 27, 2021 3:39 PM |
| **To:** | Mike Vadney |
| **Cc:** | Tim Larsen; Jackson Davis; Arpi Salbashian |
| **Subject:** | RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI |
| **Attachments:** | 20210927_SCAN.pdf; RE: Spring Mountain Vineyards Inc. |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Mike Vadney | | |
| | Tim Larsen | | |
| | Jackson Davis | Delivered: 9/27/2021 3:39 PM | Read: 9/27/2021 3:44 PM |
| | Arpi Salbashian | | Read: 9/27/2021 3:45 PM |
| | Joseph Vann | Delivered: 9/27/2021 3:39 PM | |
| | Mary Seavoy | | |
| | Don Yannias | | |

Mike,

I hope this email finds you well.

Attached is Spring Mountain Vineyards ("SMV") sworn statement in partial proof of loss for its property damage claim. Please note that SMV revised this sworn partial proof of loss to reflect that this payment constitutes only a partial payment against the net remaining balance (including withheld depreciation) due and owing to SMV from its insurers for its fire-related losses, which Greenspan's Tim Larsen forward to you along with SMV's statement of loss on August 26, 2021 (attached again here).

As you know, none of the insurers have issued a coverage opinion and analysis to date despite SMV's repeated requests that they provide such letters. The failure to timely provide such letters, opinions and analyses has greatly prejudiced SMV and the insurers have violated, among other things, their respective obligations of good faith and fair dealing owed to their insured. Absent SMV's review and analysis of such coverage letters, opinions or analyses, SMV will not accept any statement of loss or statements of value that characterizes a payment as anything besides either (i) a partial payment against the remaining balance owed on SMV's August 26 proof of loss; or (ii) an advance payment. In fact, all previous proofs of loss were submitted and paid on an advance payment basis.

SMV has informed its July 1, 2020-21 insurers and McLarens that the insurers promised to, did and were obligated to provide coverage on a blanket coverage basis. At the time of either the payment of the initial premium or promise to pay the initial premium on or about July 1, 2020, SMV was informed that the insurers had bound coverage and would issue policies on a blanket coverage basis for any and all property loss at the property unless any such loss was specifically excluded. Any deviation from this promise would, among other things, constitute a breach of their contractual obligation, bad faith and misrepresentations. As such, SMV reserves all of its rights under the policies, at law and/or in equity, none of which are waived.

We hope that, as you previously promised, the insurers' coverage letters, opinions and analyses will soon be forthcoming. In the meantime, please contact us if you have any questions.

Best regards,
Jay

i

Jay B. Spievack

C | T | S | W

Cohen Tauber Spievack & Wagner P.C.
*Partners in Your Strategic Vision*
420 Lexington Ave., Suite 2400
New York NY 10170-2499
Direct: (212) 381-8735
Fax: (212) 586-5095
Email: jspievack@ctswlaw.com
www.ctswlaw.com

This communication, including any attachments, is intended solely for the confidential use of the person(s) named above. If you have received this communication in error, please notify the sender immediately and delete/destroy the original. Any reader other than the intended recipient is hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.

**From:** Mike Vadney <mike.vadney@mclarens.com>
**Sent:** Wednesday, September 22, 2021 8:55 AM
**To:** Tim Larsen <tim@greenspan-ai.com>
**Cc:** Jay Spievack <jspievack@ctswlaw.com>
**Subject:** RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Tim:

We hope this email finds you doing great and up and at them!!!

We provide the attached Proof of Loss including the Unnamed Location, Outdoor Property and revised Shop estimate (this was forwarded to you back on September 14, 2021). We have also attached the Schedule of Values along with our current Statement of Loss.

We ask you to please have an officer of the Corporation sign the Proof of Loss in the presence of a Notary Public and return to the Undersigned via email in PDF.  We will then forward the executed document to the Insurers for payment.

In the interim Tim, have you been able to review the Shop estimate and advise if we are now in agreement?  Also, please advise Tim if there is disagreement on any of the other values within our Statement of Loss.

As always, if you have any questions, please call me at 714/747-0532 or email me at Mike.Vadney@Mclarens.com

This email and attachments are intended as an explanation of the handling of this claim and does not waive the rights of any party under the terms, conditions and/or provisions of the policy of insurance or applicable law.

**Mike Vadney | McLarens**
Vice President | Senior Executive General Adjuster
mike.vadney@mclarens.com

9121 Atlanta Ave., #611

Huntington Beach, CA 92646
**+1 714.747.0532 |** cell
**+1 818.265.0277 |** office

CONFIDENTIALITY AND PRIVILEGE NOTICE:

**From:** Mike Vadney
**Sent:** Tuesday, September 14, 2021 5:44 AM
**To:** 'Tim Larsen' <tim@greenspan-ai.com>
**Cc:** Jay Spievack <jspievack@ctswlaw.com>
**Subject:** RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Tim:

We hope this email finds you doing great and staying safe.

We appreciate your Team forwarding the requested photos. Very appreciated.

We have attached Young and Associates revised Shop estimate for your review and comment.

Young and Associates in completing their boundaries, parcel analysis along with scope/estimate review.  We hope to discuss their analysis shortly.

The Market is reviewing the revised Proof of Loss and Statement of Loss and will be responding in due course.

The Market is reviewing the Unnamed Location claim for the La Perla House and Outdoor Property. We hope to provide a response to you on each very shortly.  And Tim, again, we wish to confirm that the La Perla House does not have any other Insurance and is in fact, uninsured.  Please write me back to confirm.

Thanks Tim and have a great day!!!

This email is intended as an explanation of the handling of this claim and does not waive the rights of any party under the terms, conditions and/or provisions of the policy of Insurance or applicable law.

**Mike Vadney** | McLarens
Vice President | Senior Executive General Adjuster
mike.vadney@mclarens.com

9121 Atlanta Ave., #611
Huntington Beach, CA 92646
**+1 714.747.0532 |** cell
**+1 818.265.0277 |** office

3

CONFIDENTIALITY AND PRIVILEGE NOTICE:

**From:** Tim Larsen <tim@greenspan-ai.com>
**Sent:** Thursday, August 26, 2021 9:27 AM
**To:** Mike Vadney <mike.vadney@mclarens.com>; Ashley Mendoza <ashley@greenspan-ai.com>
**Cc:** Jay Spievack <jspievack@ctswlaw.com>; Adam.kotara@rlicorp.com; Michael Prough <mdp@proughlaw.com>
**Subject:** RE: Spring Mountain Vineyards Inc.

Mike,

Pursuant to my correspondence of earlier this week, please find the attached updated Proof of Loss and accompanying Statement of Loss. If you have any questions please do not hesitate to contact me.

Thank you,

**Tim Larsen**
Executive General Adjuster
tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

 

Visit us on the web at www.greenspan-ai.com

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

**From:** Tim Larsen
**Sent:** Tuesday, August 24, 2021 10:20 AM
**To:** 'Mike Vadney' <mike.vadney@mclarens.com>; Ashley Mendoza <ashley@greenspan-ai.com>
**Cc:** 'Jay Spievack' <jspievack@ctswlaw.com>; 'Adam.kotara@rlicorp.com' <Adam.kotara@rlicorp.com>; 'Michael Prough' <mdp@proughlaw.com>
**Subject:** Spring Mountain Vineyards Inc.

Mike,

I hope this e-mail finds you well. Please find the attached correspondence for your review.

Let me know when you can meet next week.

4

Thank you,

**Tim Larsen**
Executive General Adjuster
tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

 

THE GREENSPAN CO./
ADJUSTERS INTERNATIONAL
The right way to settle claims

Visit us on the web at www.greenspan-ai.com

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

PRIVACY STATEMENT: We are required to capture and process personal information supplied to us in the fulfilment of our services. Our obligations vary depending on the jurisdiction involved. For further details as to how this information is used, kept secure and your rights, please see the relevant Privacy Statement on our website
– https://www.mclarens.com/privacy-policy/

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

## Sworn Statement in Partial Proof of Loss – PROPERTY DAMAGE

| | | | |
|---|---|---|---|
| Policy Number: | See Below | McLarens Claim Number: | 001.024327.MI |
| Policy Amount: | $5,000,000 First Excess Layer | Agent: | Arthur J. Gallagher |
| Date Issued: | 07/01/2020 | Agency Location: | San Francisco, CA |
| Date Expires: | 07/01/2021 | | |

To the:

    Landmark Insurance Company, Policy Number: LHD425938, Claim Number: 7030150863
    Kinsale Insurance Company, Policy Number: 1001199120, Claim Number: 19665

At time of loss, by the above policy of insurance you insured **Spring Mountain Vineyard, Inc.**, against loss by water to the property:
**Per the Applicable Policy or Policies**

Described according to the terms and conditions of the applicable policy or policies and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN: An insurable loss occurred about the hour of UNKNOWN, on the 27th day of September 2020. The cause and origin of the said loss was **fire.**

OCCUPANCY: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: **Commercial.**

TITLE AND CHANGES: At the time of the loss, the interest of your insured in the property described therein was property owner. No other person or persons had any interest therein or encumbrance thereon, except **MGG California LLC, as Collateral.** Since the said policy was issued, there has been no assignment thereof, change of interest, use, occupancy, possession, location or exposure of the property described, except **None.**

TOTAL. The TOTAL AMOUNT OF INSURANCE for the first excess layer upon the property described by this policy was, at the time of the loss, $5,000,000, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

| | | | |
|---|---|---|---|
| VALUE: | The Actual Cash Value of said property at the time of the loss was: | $ | NOT DETERMINED |
| BUIDING AND BPP LOSS: | The BUILDING AND BPP LOSS AND DAMAGE was: | $ | 8,194,932.37 |
| DEDUCTIBLE: | The DEDUCTIBLE as provided by the policy was: | $ | 500,000.00 |
| DEPRECIATION: | The DEPRECIATION withheld from settlement is: | $ | 35,397.50 |
| AMOUNT PAID: | The amount PAID TO DATE is: | $ | 7,508,855.85 |
| RCV/ACV AMOUNT CLAIMED: | The RCV/ACV AMOUNT CLAIMED under the above numbered policy is: | $ | 150,679.02* |

\* Funding Insurers are in first excess layer, $5,000,000 xs of $5,000,000 Primary and Participate at 50% each:
  • **Landmark**, 50% of $150,679.02 or $75,339.51  -  **Kinsale**, 50% of $150,679.02 or $75,339.51

STATEMENTS OF INSURED: The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

Insured: _____ PRESIDENT

The furnishing of this Partial Proof of Loss by the Insured is not, and is not intended to be a waiver of any of its rights that it may have under any policy for the policy period July 1, 2020 to July 1, 2021, and all of the Insured's rights are specifically reserved, including but not limited to the total blank property coverage that was afforded by and remains available under all of the applicable policies. The Insurer's acceptance of the partial payment afforded in this Partial Proof of Loss or the RCV/ACV Amount Claimed is not, and is not intended to be a waiver of the Insured's rights to full payment of its losses under the policies, at law and/or in equity, all of which rights are specifically reserved. Finally, the Insured does not accept or acknowledge any statements, forms or values that the Insurers' attach or assign to its loss until such time as the Insured and the Insurers agree in writing that such statements, forms or values assigned to the Insured's loss are in accordance with the terms and conditions of the applicable policy or policies and of all forms, endorsements, transfers and assignments attached thereto.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of: _____   Insured: _____

County of: _____   Insured: _____

Subscribed and sworn to before me this 27 of September , 20 21 Personally Known to Me CHRISTINE SENDAR

(00460314.DOCX; 1)

**Jay Spievack**

| | |
|---|---|
| **From:** | Tim Larsen <tim@greenspan-ai.com> |
| **Sent:** | Thursday, August 26, 2021 12:27 PM |
| **To:** | Mike Vadney; Ashley Mendoza |
| **Cc:** | Jay Spievack; Adam.kotara@rlicorp.com; Michael Prough |
| **Subject:** | RE: Spring Mountain Vineyards Inc. |
| **Attachments:** | 20210823_SCAN.PDF; Statement of Loss 08182021.xlsx |

Mike,

Pursuant to my correspondence of earlier this week, please find the attached updated Proof of Loss and accompanying Statement of Loss. If you have any questions please do not hesitate to contact me.

Thank you,

**Tim Larsen**
Executive General Adjuster
tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

 

Visit us on the web at www.greenspan-ai.com

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

**From:** Tim Larsen
**Sent:** Tuesday, August 24, 2021 10:20 AM
**To:** 'Mike Vadney' <mike.vadney@mclarens.com>; Ashley Mendoza <ashley@greenspan-ai.com>
**Cc:** 'Jay Spievack' <jspievack@ctswlaw.com>; 'Adam.kotara@rlicorp.com' <Adam.kotara@rlicorp.com>; 'Michael Prough' <mdp@proughlaw.com>
**Subject:** Spring Mountain Vineyards Inc.

Mike,

I hope this e-mail finds you well. Please find the attached correspondence for your review.

Let me know when you can meet next week.

Thank you,

**Tim Larsen**
Executive General Adjuster

1

tim@greenspan-ai.com
800.248.3888
925.658.2944 (cell)

 

THE GREENSPAN CO./
ADJUSTERS INTERNATIONAL
The *right* way to settle claims

Visit us on the web at www.greenspan-ai.com

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.



THE GREENSPAN CO./
ADJUSTERS INTERNATIONAL
The right way to settle claims®

August 23, 2021

400 Oyster Point Boulevard, Suite 519
South San Francisco, CA 94080
800.248.3888
650.583.4300
Fax 650.583.4049
www.greenspan-ai.com
info@greenspan-ai.com
CA DOI Lic. #2E11301

Mr. Michael Vadney
Vice-President/Senior Executive General Adjustor
McLarens Insurance Services
9121 Atlantic Avenue, 611
Huntington Beach, CA 92646

   Re: Insured:  Spring Mountain Vineyards, Inc.
    Your File No: 001.024327.MI
    Policies Nos: LHD425938 (Landmark)
         1001199120 (Kinsale)
         73PRX20A76C (Hallmark)
         BRB0007845 (Western World)
         ELF646752-20 (AXIS)
    Date of Loss: September 27, 2020

Dear Mike:

As you know, we represent Spring Mountain Vineyards, Inc ("SMV") in relation to its above-referenced fire-related property damage and losses. This letter is intended to follow up on several of the issues that we discussed during our August 12 meeting at SMV's property.

First, we discussed SMV's Proof and Statement of Loss (the "POL"). In your August 10 letter, you indicated that SMV's POL number did not add up to the amount claimed (at p. 3).[1] We have reviewed and revised SMV's POL. The total loss equals $34,033,873.39 and the revised POL will follow this correspondence shortly.[2]

Second, McLarens states in its August 10 letter that the Alba Winery Buildings, the Shop the White Barn are not identified on the Statement of Values. However, each of these structures is identified on the SOV. The Alba Winery Buildings are "Alba-2849 Spring Mountain Road" and are listed as "Winery Building #1" and "Winery Building #2 under occupancy. Both the Shop and the White Barn are "Miravelle-2805 Spring Mountain Road" and are respectively listed as the "Shop" and the "Barn" under occupancy.

---

[1] This letter is not intended to fully respond to McLarens' August 10 letter, including the coverage issues raised in that letter. In this letter, SMV addresses any remaining payments owed notwithstanding any purported coverage issues. SMV will respond to Landmark, Kinsale, Mt Hawley, Hallmark. Western World and AXIS (collectively, the "Insurers") after these issues are resolved.

[2] Please note that SMV has withdrawn Alba House from its revised POL, which you will receive shortly.

## SWORN STATEMENT IN PARTIAL PROOF OF LOSS

| ESP 2004861 00 | See Below* |
|---|---|
| (POLICY NUMBER) | Carriers |
| See Below* | 001.024327.MI |
| (POLICY AT TIME OF LOSS) | McLaren File Number |
| 7/1/2020 | September 27, 2021 |
| (Date of Inception) | Date of Loss |
| 7/1/2021 | Arthur J Gallagher |
| (Date of Expiration) | Broker |

At time of loss, by the above indicated policy of insurance you insured: Spring Mountain Vineyard Inc.

Against loss by **All Risk** to the property described according to the terms and conditions of the said policy and all forms,

1.  **Time and Origin**: An insurable loss occurred on **September 27, 2020** The cause and origin of the said loss were: **Fire**

2.  **Occupancy**: The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose whatever: Winery

3.  **Title and Interest**: At the time of the loss the interest of your insured in the property described therein was **Owner**. No other person or persons had any interest therein or incumbrance thereon, except: MGG California LLC, as Collateral

4.  **Changes**: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: **None.**

5.  **Total Insurance**: The total amount of insurance upon the property described by this policy was, at the time of the loss, **as described more fully in the declaration page of the policies See Below***

| | | |
|---|---|---|
| 6. The Actual Cash Value of said property at the time of the loss was: | | Undetermined at this time |
| 7. The Loss and Damage to Building: | | $34,033,873.39** |
| 8. The Loss due to Business Interruption: | | TBD |
| 9. The Amount Claimed under the above numbered policy is: | = | $34,033,873.39 |
| 10. Less Amount of Deferment / Holdback: | - | N/A |
| 11. Actual Cash Value of Loss: | | TBD |
| 12. Less Amount of Deductible: | - | TBD |
| 13. Advance Payment | - | $7,508,855.85 |
| 14. Net Remaining Balance including Withheld Depreciation | - | $26,525,017.44 |

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this Proof of Loss by the insured is not a waiver of any of its rights it may have under the policy or at law.

State of

County of

Subscribed and sworn before me this          23 rd     day of    August    20

Insured _____   SMU, INC.
PRESIDENT

CHRISTINE SERDAR
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
June 12, 2022

_____ Notary Public          My commission Expires   6/12/2022

*Landmark Insurance Company, Policy Number: LHD425938, Claim Number: 7030150863  Kinsale Insurance Company, Policy Number: 100
First Specialty Insurance Company, Policy Number ESP2004861 00, Claim Number 20201448295 Lloyds Policy Number W2BCE9200101, Cl
**See attached spreadsheet for a breakdown of the claim and its accompanying documentation

DATE: 08/18/2021
INSURED:  Spring Mountain Vineyard, Inc.
DATE OF LOSS: September 27, 2020
CAUSE OF LOSS: CAT 2068 Glass Fire
LOSS LOCATION:  Per Schedule of Values
INSURERS FILE NUMBERS: Per SOI
MCLARENS FILE NO.: 001.024327.MI

## STATEMENT OF LOSS - BUILDING ACV/RCV and LOSS OF RENTS

| LINE OF COVERAGE | | VALUE | LOSS | CLAIM |
|---|---|---|---|---|
| ITEM AS DESCRIBED: BUILDING | | | | |
| Loss as Determined: BUILDING | | | | |
| 1. TOTAL LOSS BUILDINGS: | | | | |
| | | | | |
| La Perla Winery | | | | |
| La Perla House | | | | $   2,387,412.52 |
| 2. REPAIR OF BUILDINGS | | | | $ 19,316,701.76 |
| A.  Building 4, Miravelle Mechanical Shop | | | | |
| Less: Depreciation | | | | |
| Building 4, Mechanical Shop ACV | | | | $      578,796.53 |
| B.  Building 6, Miravelle Greenhouse | | | | |
| Less: Depreciation | | | | |
| Building 6, Miravelle Greenhouse ACV | | | | $      171,644.73 |
| C.  Building 10, Alba Winery Buildings | | | | $      741,474.47 |
| | | | | |
| Red Barn | | | | $   2,608,338.32 |
| 3.  CLEANING OF BUILDINGS | | | | |
| A.  Building 1, Miravelle Winery/Office | | | | $      314,732.00 |
| B.  Building 2, Miravelle Victorian House | | | | $      176,000.00 |
| C.  Building 3, Miravelle Cottage | | | | $        33,000.00 |
| D.  Building 4, Miravelle Mechanical Shop | | | | $        66,000.00 |
| E.  Building 5, Miravelle Barn | | | | $        83,600.00 |
| F.  Building 6, Miravelle Greenhouse | | | | $          9,900.00 |
| G.  Building 7, Miravelle Cave | | | | $      442,398.00 |
| H.  Building 8, Historic Winery | | | | $      292,600.00 |
| 4.  UNNAMED LOCATIONS | | | | $      100,000.00 |
| 5.  Young and Associates, Painting bid | | | | |
| 6. Cleaning BPP - See Breakdown Below | | | | $      787,692.35 |
| Trellis - Irrigation | | | | $   5,659,726.67 |
| Painting at ACV | | | | $      263,856.04 |
| Building Claim at ACV Gross | | $            - | | $ 34,033,873.39 |
| Less: Fire Occurrence Deductible | | | | $     (500,000.00) |
| Building Claim at ACV Net | | | | $ 33,533,873.39 |

INSURED:  Spring Mountain Vineyard, Inc.
DATE OF LOSS: March 8, 2021
Page 2 of 2

ITEM AS DESCRIBED: BUSINESS PERSONAL
PROPERTY ("BPP")
Loss as Determined: BPP
1.  BPP Cleaning

| | | | | |
|---|---|---|---|---|
| a.  Building 1, Miravelle Winery, Office | $ | 85,836.00 | $ | 85,836.00 |
| b.  Building 2, Miravelle Victorian House | $ | 49,000.00 | $ | 49,000.00 |
| c.  Building 3, Miravelle Cottage | $ | 9,000.00 | $ | 9,000.00 |
| d.  Building 4, Miravelle Mechanical Shop | $ | 18,000.00 | $ | 18,000.00 |
| e.  Building 5, Miravelle Barn | $ | 22,800.00 | $ | 22,800.00 |
| f.  Building 7, Miravelle Cave | | | | |
| 1.  Cleaning Barrels | $ | 306,030.94 | $ | 306,030.94 |
| 2.  Cleaning Inventory | $ | 176,371.41 | $ | 176,371.41 |
| 3.  Cleaning General | $ | 120,654.00 | $ | 120,654.00 |
| | $ | 787,692.35 | $ | 787,692.35 |



# EXHIBIT 18



9121 Atlanta Ave., 611
Huntington Beach, CA  92646

Tel      +818 265 0277
Mobile  +714 747 0532
www.mclarens.com
los.angeles@mclarens.com

**Michael Vadney**
Vice President | Senior Executive General Adjuster
Mike.Vadney@McLarens.com

September 29, 2021

<u>**Via Electronic Mail**</u>

Mr. Tim Larsen
Executive General Adjuster
The Greenspan Co.
400 Oyster Point Blvd., Suite 519
San Francisco, CA 94080
tim@greenspan-ai.com

Re:   Insured:        Spring Mountain Vineyard, Inc.
      File No.:       001.024327.MI
      Policy Nos.:    LHD425938 (Landmark)
                      1001199120 (Kinsale)
                      73PRX20A76C (Hallmark)
                      BRB0007845 (Western World)
                      ELF646752-20 (AXIS)
      Date of Loss:   September 27, 2020

Dear Mr. Larsen:

This letter responds to Spring Mountain Vineyard, Inc.'s ("Spring Mountain") August 23, 2021
Revised Partial Proof of Loss ("POL") on behalf of the following insurers:

>       Landmark American Insurance Company ("Landmark")
>       Kinsale Insurance Company ("Kinsale")
>       Hallmark Specialty Insurance Company ("Hallmark")
>       Western World Insurance Company ("Western World")
>       AXIS Surplus Insurance Company ("AXIS")[1]

As set forth more fully below, these insurers accept in part and reject in part the POL.

**<u>RESOLVED ITEMS</u>**

The insurers have paid Spring Mountain $7,508,855.85 to date, after applying a $500,000
deductible and applicable depreciation.  Landmark and Kinsale have also accepted coverage up
to the $100,000 sublimit for miscellaneous unnamed location coverage, and up to the $10,000
limit for outdoor property, pending receipt of an additional Proof of Loss for those specific

---

[1] First Specialty Insurance Company and Lloyds have both exhausted their policy limits for this loss.  Mt. Hawley
Insurance Company will respond separately to the POL.

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



items.  Based on the information submitted in the POL, Spring Mountain has accepted the insurers' damage estimates and corresponding payments on the following items.

Buildings Identified on Statement of Value ("SOV")

Miravelle Shop -                  $102,745.32[2]

**Building Cleaning**

| | |
|---|---|
| Miravelle Winery Office - | $314,732 |
| Miravelle Victorian House - | $176,000 |
| Miravelle Cottage - | $ 33,000 |
| Miravelle Shop - | $ 66,000 |
| Miravelle Barn - | $ 83,600 |
| Miravelle Greenhouse - | $  9,900 |
| Miravelle Cave - | $442,398 |
| Miravelle Historic Winery - | $292,600 |
| **Total** | **$1,418,230** |

**Building Personal Property Cleaning**

| | |
|---|---|
| Miravelle Winery Office - | $ 85,836 |
| Miravelle Victorian House - | $ 49,000 |
| Miravelle Cottage - | $  9,000 |
| Miravelle Shop - | $ 18,000 |
| Miravelle Barn - | $ 22,800 |
| Miravelle Cave Barrels - | $306,030.94 |
| Miravelle Cave Inventory - | $176,371.41 |
| Miravelle Cave General - | $120,654.00 |
| **Total** | **$787,692.35** |

**Building Painting**

| | |
|---|---|
| Miravelle Winery Office | |
| Miravelle Victorian House | |
| Miravelle Cottage | |
| Miravelle Barn | |
| **Total** | **$263,856.04[3]** |

**Miscellaneous Unnamed Location**

---

[2] The POL shows the Miravelle Shop with a claimed cost of repair of $578,796.53  The insurers have previously agreed to pay $62,066.31.  Spring Mountain, Landmark, and Kinsale have agreed to a final cost of repair for the shop of $102,745.32.
[3] Replacement cost of $276,824.76 less depreciation of $12,428.72.

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



La Perla House                          $100,000

**Outdoor Property**

Trees, Shrubs, Plants              $ 10,000

**Total Resolved Items –**          **$2,682,523.71**

**DISPUTED ITEMS**

Spring Mountain disputes the following items. The insurers' agreed amount due on each specific disputed item (prior to applying the $500,000 deductible to the total amount) is shown in parenthesis.

**Buildings Identified on Statement of Values ("SOV")**

| | |
|---|---|
| La Perla Winery - | $19,316,701.76 ($4,800,000) |
| Miravelle Greenhouse - | $171,644.73 ($152,011.15) |
| Alba Winery Buildings (#1-2) | $741,474.47 ($525,000) |
| **Total** | **$20,229,820.96 ($5,477,011.15)** |

**Unidentified Buildings**

| | |
|---|---|
| La Perla House - | $2,287,412.52 ($0)[4] |
| Red Barn - | $2,608,338.32 ($0) |
| **Total** | **$4,895,750.84** |

**Purported Fixtures**

| | |
|---|---|
| Trellis and Irrigation - | $5,659,726.67 ($0) |

**E.      Total in Dispute**

| | |
|---|---|
| Total claimed damages - | $33,467,822.18 |
| Market payments (after applying $500k deductible) - | ($7,659,534.86)[5] |
| Deductible - | ($500,000) |
| **Total in Dispute -** | **$25,308,287.32** |

---

[4] This total is reduced by the $100,000 sublimit for miscellaneous unnamed locations accepted by Landmark and Kinsale.

[5] This total includes the $110,000 for the miscellaneous unnamed location and outdoor property sublimits accepted by Landmark and Kinsale, and an additional $40,679.01 for the agreed amount on the Miravelle Shop..

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



## RESPONSE TO DISPUTED ITEMS
## Buildings on SOV

Each of the policies contains "Limit of Liability" language as follows:

**First Specialty**

2.   The premium for this Policy is based upon the Statement of Values on file with us, or attached to this Policy.  In the event of loss hereunder, the total Program Limit of Liability, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

    a.   The actual adjusted amount of loss, less applicable deductible(s),

    b.   The total stated value for the property involved, as shown on the latest Statement of Values on file with us, less applicable deductible(s),

    c.   The limit of Liability or Limit of Insurance shown on the fact of this Policy or endorsed onto this Policy.

**Landmark**

1.   In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence:"

    a.   The actual adjusted amount of loss, less applicable deductibles and primary and underlying excess limits; or

    b.   100% of the individually stated value for each scheduled item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits; or

    c.   The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy, if, after the application of the limits in **a**. or **b**. above to each scheduled item of coverage which had the loss, the total excess such Limit of Liability.

\*   \*   \*

3.   The premium for this policy is based upon the Statement of Values on file with the Company or attached to this policy.

**Kinsale**

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



2. The Premium for this Policy is based upon the Statement of Values, on file with the Company, or attached to this Policy.  In the event of loss under this Policy, liability of the Company shall be limited to the least of the following:

    a. The actual adjusted amount of loss, less applicable deductible(s),

    b. An amount no greater than 100% of the individually stated value for the property, involved, as shown on the Statement of Values, on file with the Company, less applicable deductible(s),

    c. The Limit of Liability as specified in Item 1. of the Declarations Page.

**Hallmark Specialty**

1. In the event of loss here under, liability of the Company shall be limited to the least of the following in any one "occurrence:"

    a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

    b. The individually stated value for each scheduled unit of insurance for Building, Personal Property, Time Element or other coverage at the location which had the loss shown on the latest Statement of Values on file with the Company, less applicable deductibles and primary and underlying excess limits.  If no value is shown for a scheduled item then there is no coverage for that item; or

    c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

\*   \*   \*

3. the premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.

**Western World**

In the event of loss or damage, the liability of the Company will be limited to the lesser of the following:

    (1) The actual value of the loss or damage after loss adjustment, less all applicable Underlying Insurance Policies, deductibles and self-insured retentions;

    (2) The stated value for the lost or damaged property, as shown on the latest statement of values on file with the Company prior to the date of loss or

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



damage, less all applicable Underlying Insurance Policies, deductibles and self-insured retentions; or

(3)    The applicable Limit of Insurance shown in the Declarations.

\*    \*    \*

**16.    Premium Basis**

The premium for this policy is based upon the most recent statement of values on file with the Company at the time the premium was calculated.

**AXIS**

A.    For the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy, this Policy shall not recognize:

1.    Covered loss for each type of covered property at a location in an amount greater than the value on the latest Statement of Values on file with the Company for that type of covered property at that location.

\*    \*    \*

B.    Claims payable under this Policy shall be adjusted as if any Underlying Insurance also contained this provision and were settled accordingly.

\*    \*    \*

D.    For the purpose of the application of this provision, location shall mean:

1.    as specified in the latest Statement of Values on file with the Company

The above provisions of all the policies limit liability to the amount stated in the SOV for any specific property.  Based on the above language, the policies limit the insurers' liability for each identified building to the amounts listed on the SOV.

The insurers have agreed to pay the maximum limit in the SOV for the La Perla Winery ($4,800,000) and the Alba Winery Buildings (#1-2) ($525,000).   Landmark, Kinsale, Hallmark, Western World and AXIS decline to pay any additional amounts claimed for these buildings in the POL.

**Unidentified Buildings**

The La Perla House and the Red Barn are not identified buildings on the SOV.  Landmark, Kinsale, Hallmark, Western World and AXIS do not provide coverage for buildings not listed on the SOV.  Other than the $100,000 miscellaneous unnamed locations sublimit which Landmark

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021



and Kinsale have agreed to accept on the La Perla House, these insurers decline to pay any amounts under their policies for the damages claimed for these buildings in the POL.

**Trellises and Irrigation**

The First Specialty policy provides "Building and Personal Property Coverage" in pertinent part as follows:

> **A.    Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1.    Covered Property**
>
> > Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
> >
> > a.    **Building**, meaning the building or structure described in the Declarations, including:
> >
> > > \*    \*    \*
> >
> > > (2)    Fixtures, including outdoor fixtures;
> >
> > > \*    \*    \*
> >
> > b.    **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:
> >
> > > (1)    Furniture and fixtures.

The irrigation system and the trellises do not constitute either a "Building" or "Building Personal Property" within the coverage of the First Specialty policy.  The trellises and irrigation system are not appurtenant to or attached to any of the identified buildings.  The wells, pumps and ancillary, associated plumbing, pipes, and equipment service only the vineyards and not the buildings.  None of the trellises are connected to any building but rather are erected in the various vineyards.

Based thereon, the irrigation system and the trellises do not come within the Building coverage or the Business Personal Property coverage of the First Specialty policy.  Landmark, Kinsale,

Mr. Tim Larsen
Executive General Adjuster
September 29, 2021

 **McLarens**

Hallmark, Western World and AXIS decline to pay any amounts claimed for damage to the irrigation system and the trellises in the POL.

Nothing in this letter should be read as a waiver of any rights under the Landmark, Kinsale, Hallmark, Western World and AXIS policies, or any applicable law. The inclusion of terms, conditions, definitions, and exclusions in this letter is not intended as, and it is not, an exhaustive recitation of the terms, conditions, or exclusions that may potentially apply to Landmark's, Kinsale's, Hallmark's, Western World's and/or AXIS' coverage determination under their respective policies. Landmark, Kinsale, Hallmark, Western World and AXIS reserve the right to assert any and all terms, conditions, definitions, and exclusions contained in their respective policies, even though those terms, conditions, definitions, and exclusions are not set out herein.

Landmark, Kinsale, Hallmark, Western World and AXIS also expressly reserve their right to raise any coverage defenses and Landmark, Kinsale, Hallmark, Western World and AXIS are not estopped to assert any other provision to bar or limit coverage for this matter. Moreover, no action taken in connection with the investigation or handling of this matter, including any requests for information or documents, should be deemed as an admission of coverage under the Landmark, Kinsale, Hallmark, Western World and AXIS policies. Further, any conduct of Landmark, Kinsale, Hallmark, Western World and AXIS, or their respective agents, attorneys or employees, is without waiver of any of Landmark's, Kinsale's, Hallmark's, Western World's and AXIS' rights and/or duties under their respective policies and applicable law, including but not limited to, the rights articulated herein. Landmark, Kinsale, Hallmark, Western World and AXIS shall not waive any of their respective rights unless expressly so stated in writing.

Please note that the coverage position set forth in this letter is based on the information currently available to Landmark, Kinsale, Hallmark, Western World and AXIS. Landmark, Kinsale, Hallmark, Western World and AXIS will reevaluate their coverage position under their respective policies if additional documentation, factual information or legal authority is submitted. Please note, however, that if any additional documentation, information or legal authority is submitted, Landmark, Kinsale, Hallmark, Western World and AXIS reserve the right to reevaluate their entire coverage position under their respective policies, not merely those portions of their coverage position that may be affected by such additional documentation, information or legal authority. In the event you have any knowledge of facts or legal authorities which you believe bear upon this coverage position, or have any other information which you believe is relevant to coverage, please provide that information to us as soon as possible so Landmark, Kinsale, Hallmark, Western World and AXIS can consider it.

If Spring Mountain believes that Landmark, Kinsale, Hallmark, Western World and AXIS have acted wrongly by not paying all the amounts claimed in the POL, it may have the matter reviewed by the California Department of Insurance at the following address and telephone numbers:

California Department of Insurance
Consumer Services Division
Claims Service Bureau



Mr. Tim Larsen
Executive General Adjuster
September 29, 2021

300 South Spring Street
Los Angeles, CA  90013

(213) 897 - 8921 (outside California)
(800) 927 - HELP (inside California)
(800) 482 - 4833 (TDD Only)

Thank you for your consideration.  If you have any questions, or have additional information which you believe bears on these insurers' coverage positions, please contact us.  In the meantime, we look forward to continuing to work with Spring Mountain to resolve the Shop claim.

Very truly yours,

{Sent Via Electronic Mail}

**Mike Vadney** | McLarens
Vice President | Senior Executive General Adjuster
mike.vadney@mclarens.com

9121 Atlanta Ave., 611
Huntington Beach, CA  92646
**+1 818.265.0277** | office
**+1 714.747.0532** | mobile
**+1 818.265.0288** | fax
www.mclarens.com

# EXHIBIT 19

# C | T | S | W

### COHEN TAUBER SPIEVACK & WAGNER P.C.

Jay Spievack

direct:  212-381-8735
e-mail:  jspievack@ctswlaw.com

October 29, 2021

Mike Vadney
McLarens
Vice President/Senior General Adjustor
9121 Atlanta Ave, 611
Huntington Beach, CA 92646

Re:   Insured: Spring Mountain Vineyard, Inc.
      File No.: 001.024327.MI
      Policy Nos.: LHD425938 (Landmark)
      1001199120 (Kinsale)
      73PRX20A76C (Hallmark)
      BRB0007845 (Western World)
      ELF646752-20 (AXIS)
      Date of Loss: September 27, 2020

Dear Mike:

        This letter responds to the September 29 coverage letter that McLarens sent on behalf of
Landmark American Insurance Company ("Landmark"), Kinsale Insurance Company
("Kinsale"), Hallmark Specialty Insurance Company ("Hallmark"), Western World Insurance
Company ("Western World") and AXIS Surplus Insurance Company ("AXIS") (collectively, the
"Insurers").

        As an initial matter, Spring Mountain Vineyards, Inc. ("SMV") continues to investigate
the Insurers' claim that the limit of liability for all of the July 1, 2020 to July 1, 2021 property
policies (the "20-21 Policies") is the amount stated on the statement of values for any specific
covered property.[1]  As you know, SMV applied for blanket coverage and requested that AJ
Gallagher ("AJG") secure blanket coverage for all property loss in its 20-21 policies.[2]  On or
about July 1, 2020, AJG informed SMV that it had secured blanket coverage and that the 20-21
Insurers had or would bind that coverage.  AJG also subsequently confirmed that it so informed
SMV during a conference call with SMV, Greenspan and CTSW.  In their September 29 letter,
the Insurers' policy liability limit language cited is inconsistent with AJG's representation and
warranty regarding the 20-21 Policies' coverage.

---

[1] The 20-21 Policies include an umbrella and excess policy that Mt. Hawley Insurance Company ("Mt. Hawley")
sold to SMV, Policy No. MCP0170029.  Together in this letter, Mt. Hawley and the Insurers are referred to as the
"20-21 Insurers."

[2] At that time, AJG was SMV's insurance broker.



420 Lexington Avenue  |  New York, New York 10    | Exhibit No: 6  Name:  Date: 11-17-21    | ax: 212.586.5095  |  www.ctswlaw.com

Mike Vadney
October 29, 2021
Page 2 of 5

C | T | S | W

Therefore, SMV continues to investigate why the Insurers did not deliver what they purportedly promised to SMV and AJG.  SMV reserves all of its rights under the policies, at law and/or in equity, none of which are waived.

Subject to SMV's reservation of its rights, this letter solely responds the Insurers' September 29 coverage position and calculations that they performed on a Statement of Values ("SOV") basis.  Regardless of the open blanket coverage issue's resolution, the Insurers and certain 20-21 Insurers still must reimburse SMV up to their applicable liability limits for certain property losses sustained at its vineyard due to the September 27, 2021 occurrence.

First, SMV will update and revise its Statement and Proof of Loss (the "Second Revised Proof of Loss") soon to include, among others, the Chevalier Red Barn.  During the 20-21 Insurers' inspections of the vineyard's property, SMV and Greenspan showed them all of the property damaged.  For instance, the 20-21 Insurers and McLarens visited the Chevalier Historic Winery Building listed on SMV's Statement of Values ("SOV").  Upon inspection, the 20-21 Insurers agree that the Historic Winery Building required cleaning and pay $292,600 for that repair to the Building.[3]

On SMV's SOV, the Chevalier Historic Winery Building is valued at $3.2 million.  According to the Insurers, their cleaning payment reduces the coverage remaining available for this Historic Winery Building to $2,907,400.  In its Second Revised Proof of Loss, SMV will seek to have its Insurers (Landmark and Kinsale) pay an additional $2,238,744.08 for the destroyed Chevalier Red Barn.  During their site visits, the Insurers inspected the Chevalier property and saw that the Chevalier Red Barn had been complete destroyed.  We attached SMV's property loss calculation for repair and replacement of the Chevalier Red Barn.[4]

The 20-21 policies state that "Covered Property" includes, in part, "Buildings, meaning the buildings and structures described in the Declarations, including (1) Completed additions; (2) Fixtures, including outdoor fixtures;(3) Permanently installed: (a) Machinery; and (b) Equipment; [and] (4) Personal property owned by you that is used to maintain or services the buildings or its structures…" (see First Specialty Insurance Company policy at CP 00 10 10 12 at p.1 of 16).  In their September 29 letter, the Insurers claim that completed additions and/or fixtures must be appurtenant or attached to or service any identified buildings to be covered.  SMV submits that the Chevalier Red Barn must be covered because it was a completed addition

---

[3] In their September 29 letter, the Insurers refer to the "Miravelle Historic Winery" (at p.7) and their Statement of Loss refers to "Building 8, Historic Winery." SMV believes that, however, the Insurers meant the Chevalier Historic Winery Building because no Miravelle Historic Winery Building exist.  Please let us know if the Insurers disagree.

[4] SMV notes that the "Unidentified Red Barn Building" referred to in the Insurers' September 29 letter is not the Chevalier Red Barn. That Red Barn, which is included in SMV's Revised Statement and Proof of Loss, is located at La Perla Winery and the property loss at that Barn totaled $2,608,338.32. In its Second Revised Proof of Loss, SMV will include three additional farmhouse properties that it believes would qualify as Covered Property at La Perla (attached).  But for the Insurers' position that coverage for La Perla is exhausted (see Insurers' 9/29 Letter at p.3), SMV contends that 20-21 Policies covers these farmhouses.  Accordingly, SMV reserves its rights, none of which are waived in relation to coverage for the La Perla farmhouse properties.

C | T | S | W

Mike Vadney
October 29, 2021
Page 3 of 5

that was appurtenant to, attached to and directly services the Chevalier Historic Winery Building and its operations.

In their site visits, the 20-21 Insurers and McLarens reviewed the Chevalier Historic Winery Building's operations. As you know, the Building stored marcobins. It also conducted winery operations and stored winery crushing and processors equipment used for harvested grapes. This wine crushing and processor equipment includes conveyors belts, sorting tables and assorted machinery used for wine processing.

For its part, Chevalier Red Barn stored wood wine case boxes, wine bottles and labels that SMV were used to the bottle, label and store wine processed within the Historic Winery Building. These items stored at the Barn were used to service the Chevalier Historic Winery Building's operations. The labelling, bottling and storage of Chevalier wines took place within its Historic Wine Building and the wood case boxes would be placed in, among other places, the appurtenant Red Barn for safe keeping and shipping. The Chevalier Barn also stored other winery supplies and a generator that provided power for the Historic Winery Building and the Chevalier Red Barn during any power outage.

The Chevalier Red Barn not only serviced the Historic Winery Building's operations, but it also was appurtenant to and attached to the Building itself. It shared water including wells, pumps, associated plumbing, pipes and equipment that services the Historic Winery Building. The Barn and the Building also share electricity and their electrical systems were intertwined, including a common breaker board for both structures.

It cannot be disputed that the Chevalier Red Barn is Covered Property and that the currently triggered Landmark and Kinsale's policies must cover this property loss. Therefore, Landmark and Kinsale must pay $1.8 million to SMV to cover this property loss.[5]

Second, SMV did not accept the Insurers' $102,745.32 payment as full replacement value reimbursement for the Miravelle Shop, which set the total repair costs at $578,796.53. SMV reserves its rights to seek, at a minimum, all SQV coverage for the Shop, which totals $400,000 minus the amount paid.

Third, the Insurers must reverse all or most of their $500,000 deductible charge since several property losses exceed the SOV liability limits applied by the Insurers. The Insurers, for example, improperly applied the deductible to La Perla and the Alba Winery Buildings #1 and #2. In their Statement of Loss, the Insurers value SMV's La Perla Winery loss at $9,663,613.95, and SMV's loss for (i) Alba Winery #1 at $282,020.81; and (ii) Alba Winery #2 at $455,428.33.

---

[5] SMV understands that McLarens wants to conduct a site inspection of the trellis and irrigation systems on either November 2 or 3. At that time, SMV invites McLaren to also inspect the Chevalier Historic Winery Building, its operation, that vineyard and discuss the Red Barn and its pre-fire operations with SMV and Greenspan. SMV also invites McLarens to inspect the La Perla vineyard, and discuss the farmhouses' pre-fire operations with SMV and Greenspan.

{00463004.DOCX; 1}

C | T | S | W

Mike Vadney
October 29, 2021
Page 4 of 5

While SMV does not agree with the Insurers' loss calculation, the Insurers' own SOL calculations for all three covered properties clearly exceeds their purported SOV liability limits.

The deductible cannot be applied when the property loss exceeds the applicable liability limit because the insured must pay or absorb all of the loss in excess of the policy's limit, including any deductible amount. For instance, an insured purchases a $100,000 policy for her house and suffers a $110,000 covered loss. If the policy has a $5,000 deductible, the insurance company will only pay $95,000 for the loss at most, notwithstanding the policy's $100,000 limit, if it applies the deductible in the manner suggested by the Insurers. The insured will, in effect, pay its deductible twice: (i) first, to pay the policy deductible and reduce the policy's $100,000 limit to $95,000; and (ii) second, on the first $5,000 of the $10,000 above the $100,000 policy limit since the total loss was $110,000.

In other words, the Insurers cannot apply any of the deductible to the Le Perla Winery Building or Alba Winery Buildings #1 and #2. Apply a deductible to any of the Buildings would, in effect, reduce what the triggered Insurers effectively paid to SMV below SMV's SOV liability limits for each property. For instance, assume that McLarens applied a $200,000 to the La Perla Winery, such that the triggered Insurers actually only covered $4.6 million of SOV loss limit and SMV, pursuant to the Insurers' September 29 coverage position, pays all of the SOL amount in excess. SMV would, in effect, pay all amounts above $4.6 million up to the applicable SOL.[6]

It cannot be seriously disputed that the Insurers applying a deductible to La Perla, in effect, denies SMV of its full SOV coverage. Accordingly, the Insurers must reverse their current deductibles charges and pay SMV up to, at a minimum, its SOV liability limits for the La Perla Winery and Alba Winery Buildings #1 and #2.

Fourth, the Insurers' no coverage position for the trellises and irrigation systems is misplaced. The trellises and irrigations systems are Covered Property and the triggered 20-21 Policies (Landmark, Kinsale and Mt. Hawley) clearly cover SMV's trellises and irrigation systems' damage claim (see First Specialty Insurance Company policy at CP 00 10 10 12 at p.1 of 16 (Coverage A.1.a & A.1.b). As your next inspection will show, the damaged trellises and irrigation systems are both appurtenant to and serviced buildings identified on SMV's SOV. Wells, pumps and ancillary, associated plumbing, pipes, and equipment are not only the

---

[6] On the 20-21 Insurers' SOL, they calculated La Perla Winery Buildings' loss at $9,663,613.95, which is almost $10 million below SMV's $19,316,701.76 actual loss. Since the deductible is applies according to the Insurers, SMV must pay or absorb at least the remaining $5,063,613.95 calculated by the Insurers above $4.6 million that they paid, which means that SMV is not only, in effect, require to pay or absorb twice the $200,000 deductible used in our example above, but also an amount in excess of the entire policy deductible. Therefore, the 20-21 Policies deductible must not be applied to SMV's loss.

{00463004.DOCX; 1}

C | T | S | W

Mike Vadney
October 29, 2021
Page 5 of 5

vineyards but also shared with these buildings. The trellises and irrigation systems also service the wine processing and production performed in the buildings identified in SMV's SOV.[7]

Moreover, it also cannot be seriously disputed that damaged trellises and irrigation systems are locate within 100 feet of buildings identified on SMV's SOV. For instance, damaged MV-6 and MV-10 trellises and irrigation systems are located within 100 feet of Miravelle's Winery and Office, which is Building #1 on SMV's SOV. At Miravelle, some of the worst fire-related trellis and irrigation system damage occurred at MV-8 to MV-12 and the MV-9 cannot be fully repaired unless the entire Miravelle trellises and irrigation system is repaired. Absent such repairs, the entire trellises and irrigation system network for Miravelle is useless. Accordingly, it cannot be seriously disputed that certain 20-21 Insurers must pay SMV for these losses.

In sum, the Insurers still must pay SMV for certain property damage loss resulting from the September 27, 2020 fire-related damages when calculated on SOV's basis. While SMV disputes that the Insurers' liability limit is limited to SMV's SOV for each identified building, the Insurers are still required to pay SMV for (i) $1.8 million in property damage losses to the Chevalier Red Barn; (ii) all or some of the $5,659,726.67 for the trellises and irrigation damages and loss; and (iii) the $500,000 improperly charged to SMV's deductible. We also must resolve the final amount of the Insurers' payment for the Miravelle Shop.

SMV requests an advance payment to settle these open claims, subject to all parties' respective reservations of rights under the 20-21 Policies, at law and/or in equity. We are happy to further discuss these open balances with McLarens and the 20-21 Insurers. In the meantime, please let us know if you have any questions or comments.

Again, SMV reserves all rights, none of which are waived, with particular reference to its right to blanket coverage for all losses incurred.

Very Truly Yours,

*J. B. Spievack*

Jay B. Spievack

Cc:   Michael Prough, Esq.
      Dean Burnick, Esq.
      Rebecca Weinreich, Esq.
      Jordan Harriman, Esq.
      Tim Larsen
      Jackson Davis, Esq.

---

[7] In its Second Revised Proof of Loss, SMV notes that trellises and irrigation system damage has risen from $5,659,726.67 to $6,913,148.93 (attached). The increased repair costs reflect the discovery of additional damage and that repair and replacement costs are higher because construction costs have increased, especially in California.

{00463004.DOCX; 1}

| DATE: 08/18/2021<br>INSURED:  Spring Mountain Vineyard, Inc.<br>DATE OF LOSS: September 27, 2020<br>CAUSE OF LOSS: CAT 2068 Glass Fire<br>LOSS LOCATION:  Per Schedule of Values<br>INSURERS FILE NUMBERS: Per SOI<br>MCLARENS FILE NO.: 001.024327.MI | **STATEMENT OF LOSS - BUILDING ACV/RCV<br>and LOSS OF RENTS** | | |
|---|---|---|---|
| **LINE OF COVERAGE** | | **VALUE** | **LOSS** | **CLAIM** |

| LINE OF COVERAGE | | VALUE | LOSS | CLAIM |
|---|---|---|---|---|
| ITEM AS DESCRIBED: BUILDING | | | | |
| Loss as Determined: BUILDING | | | | |
| 1. BUILDINGS: | | | | |
| | | | | |
| La Perla Winery | | | | $  19,316,701.76 |
| La Perla House | | | | $    2,387,412.52 |
| 2.  REPAIR OF BUILDINGS | | | | |
| A.  Building 4, Miravelle Mechanical Shop | | | | |
| Less: Depreciation | | | | |
| Building 4, Mechanical Shop ACV | | | | $       578,796.53 |
| B.  Building 6, Miravelle Greenhouse | | | | |
| Less: Depreciation | | | | |
| Building 6, Miravelle Greenhouse ACV | | | | $       171,644.73 |
| C.  Building 10, Alba Winery Buildings | | | | $       741,474.47 |
| La Perla Farmhouses - Total Loss | | | | $996,074.48 |
| Chevalier Red Barn - Total Loss | | | | $2,238,744.08 |
| La Perla Red Barn - Total Loss | | | | $    2,608,338.32 |
| 3.  CLEANING OF BUILDINGS | | | | |
| A.  Building 1, Miravelle Winery/Office | | | | $       314,732.00 |
| B.  Building 2, Miravelle Victorian House | | | | $       176,000.00 |
| C.  Building 3, Miravelle Cottage | | | | $         33,000.00 |
| D.  Building 4, Miravelle Mechanical Shop | | | | $         66,000.00 |
| E.  Building 5, Miravelle Barn | | | | $         83,600.00 |
| F.  Building 6, Miravelle Greenhouse | | | | $           9,900.00 |
| G.  Building 7, Miravelle Cave | | | | $       442,398.00 |
| H.  Building 8, Historic Winery | | | | $       292,600.00 |
| 4.  UNNAMED LOCATIONS | | | | $       100,000.00 |
| 5.  Young and Associates, Painting bid | | | | |
| 6. Cleaning BPP - See Breakdown Below | | | | $       787,692.35 |
| Trellis - Irrigation | | | | $    6,923,445.83 |
| Painting at ACV | | | | $       263,856.04 |
| Building Claim at ACV Gross | | $            - | | $  19,215,709.35 |
| Less: Fire Occurrence Deductible | | | | **$      (500,000.00)** |
| Building Claim at ACV Net | | | | $  18,715,709.35 |

INSURED:  Spring Mountain Vineyard, Inc.
DATE OF LOSS: March 8, 2021
Page 2 of 2

ITEM AS DESCRIBED: BUSINESS PERSONAL PROPERTY ("BPP")
Loss as Determined: BPP
1. BPP Cleaning

| | | | | |
|---|---|---:|---|---:|
| a. Building 1, Miravelle Winery, Office | | $ | 85,836.00 | $ | 85,836.00 |
| b. Building 2, Miravelle Victorian House | | $ | 49,000.00 | $ | 49,000.00 |
| c. Building 3, Miravelle Cottage | | $ | 9,000.00 | $ | 9,000.00 |
| d. Building 4, Miravelle Mechanical Shop | | $ | 18,000.00 | $ | 18,000.00 |
| e. Building 5, Miravelle Barn | | $ | 22,800.00 | $ | 22,800.00 |
| f. Building 7, Miravelle Cave | | | | | |
|    1. Cleaning Barrels | | $ | 306,030.94 | $ | 306,030.94 |
|    2. Cleaning Inventory | | $ | 176,371.41 | $ | 176,371.41 |
|    3. Cleaning General | | $ | 120,654.00 | $ | 120,654.00 |
| | | $ | 787,692.35 | $ | 787,692.35 |



## The Greenspan Co./Adjusters International

400 Oyster Point Blvd #519
South San Francisco, CA 94080

| | |
|---|---|
| Insured: | Spring Mountain Vineyard |
| Property: | 2805 Spring Mountain Rd |
| | St Helena , CA 94574 |

Estimator:   Estimator

**Claim Number:**                    **Policy Number:**                    **Type of Loss:** <NONE>

Date of Loss:                                        Date Received:
Date Inspected:                                     Date Entered:      9/1/2020 12:00 AM

| | |
|---|---|
| Price List: | CASO8X_DEC20 |
| | Restoration/Service/Remodel |
| Estimate: | SMV-CHEVALIER-BARN |

This estimated is based on the initial information of the property using the Xactimate Residential Evaluation tool and is not based on any plans or specifications. It is an estimate to return the building to the pre-loss condition based on the information available. No consideration is given to any code enforcement issues that may pertain to the rebuilding or replacing of the structure.

The insured reserves the right to amend, adjust or supplement this estimate if additional damages become known.
The insured reserves the right to submit code upgrade damages as they become known.
Nothing in this estimate or cover is a waiver of the rights or coverages available to the insured under the policy of insurance enforce.

Any pollutant or asbestos abatement is not included in this estimate.

 **The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

SMV-CHEVALIER-BARN

Chevalier

Main Level

**Main Level**

| DESCRIPTION | QTY | | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Rough in plumbing - includes supply and waste lines | 1,500.00 | SF | 0.00 | 4.11 | 115.09 | 1,256.02 | 7,536.11 |
| Exterior faucet / hose bibb | 4.00 | EA | 0.00 | 75.44 | 2.62 | 60.88 | 365.26 |
| Wire - average residence - copper wiring | 1,500.00 | SF | 0.00 | 6.50 | 148.50 | 1,979.70 | 11,878.20 |
| Trunk cable - aluminum - 4 wire 4/0 | 40.00 | LF | 0.00 | 16.12 | 12.94 | 131.54 | 789.28 |
| Meter base and main disconnect - 200 amp | 1.00 | EA | 0.00 | 568.49 | 15.26 | 116.76 | 700.51 |
| Meter mast for overhead power - 2" conduit | 1.00 | EA | 0.00 | 606.85 | 9.10 | 123.20 | 739.15 |
| Breaker panel - 200 amp | 1.00 | EA | 0.00 | 1,659.45 | 37.77 | 339.46 | 2,036.68 |
| Exterior light fixture - High grade | 3.00 | EA | 0.00 | 139.45 | 18.56 | 87.40 | 524.31 |
| Topsoil (per CY) | 111.11 | CY | 0.00 | 38.00 | 348.33 | 914.10 | 5,484.61 |
| Front end wheel loader and operator - move imported soils and rough grade | 40.00 | HR | 0.00 | 121.79 | 0.00 | 974.32 | 5,845.92 |
| General Laborer - per hour | 40.00 | HR | 0.00 | 67.95 | 0.00 | 543.60 | 3,261.60 |
| General Laborer - per hour | 32.00 | HR | 0.00 | 67.95 | 0.00 | 434.88 | 2,609.28 |
| Walk behind plate compactor and operator | 24.00 | HR | 0.00 | 122.49 | 0.00 | 587.96 | 3,527.72 |
| Walk behind drum compactor and operator | 24.00 | HR | 0.00 | 146.23 | 0.00 | 701.90 | 4,211.42 |
| Backhoe loader and operator | 40.00 | HR | 0.00 | 157.76 | 0.00 | 1,262.08 | 7,572.48 |
| General Laborer - per hour | 40.00 | HR | 0.00 | 67.95 | 0.00 | 543.60 | 3,261.60 |
| Dump truck and operator - 10 ton | 40.00 | HR | 0.00 | 110.00 | 0.00 | 880.00 | 5,280.00 |
| Siding - beveled - redwood (clapboard) | 3,200.00 | SF | 0.00 | 7.63 | 958.32 | 5,074.86 | 30,449.18 |
| Siding Installer - per hour | 160.00 | HR | 0.00 | 120.03 | 0.00 | 3,840.96 | 23,045.76 |
| Concrete pier or footing with post anchor | 20.00 | EA | 0.00 | 167.64 | 60.27 | 682.62 | 4,095.69 |
| Seal & paint wood siding | 3,200.00 | SF | 0.00 | 2.26 | 118.80 | 1,470.16 | 8,820.96 |

Total: Main Level | | | | | 1,845.56 | 22,006.00 | 132,035.72



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080



| Barn | | | | | Height: 20' |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| 3,200.00 SF Walls | 1,500.00 SF Ceiling | |
| 4,700.00 SF Walls & Ceiling | 1,500.00 SF Floor | |
| 166.67 SY Flooring | 160.00 LF Floor Perimeter | |
| 160.00 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Material Only Timber beam, 8x16 | 800.00 LF | 0.00 | 31.15 | 2,055.90 | 5,395.18 | 32,371.08 |
| Material Only Timber beam, 6x10 | 350.00 LF | 0.00 | 13.23 | 382.02 | 1,002.50 | 6,015.02 |
| Material Only Timber joist, 4x12 | 1,800.00 LF | 0.00 | 9.19 | 1,364.72 | 3,581.34 | 21,488.06 |
| Material Only Timber truss - 10x10, 6/12 pitch - Hammer beam | 450.00 LF | 0.00 | 252.19 | 9,362.55 | 24,569.62 | 147,417.67 |
| Material Only Sheathing - spaced 1" x 6" | 3,200.00 SF | 0.00 | 1.86 | 491.04 | 1,288.60 | 7,731.64 |
| Material Only 2" x 4" lumber - redwood (.667 BF per LF) | 2,500.00 LF | 0.00 | 2.44 | 503.25 | 1,320.66 | 7,923.91 |
| Material Only 2" x 6" lumber - redwood (1 BF per LF) | 1,500.00 LF | 0.00 | 2.99 | 370.01 | 971.00 | 5,826.01 |
| Timber Framing Carpenter - per hour | 4,800.00 HR | 0.00 | 119.55 | 0.00 | 114,768.00 | 688,608.00 |
| Carpenter - General Framer - per hour | 4,800.00 HR | 0.00 | 119.55 | 0.00 | 114,768.00 | 688,608.00 |
| Commercial Supervision / Project Management - per hour | 960.00 HR | 0.00 | 93.80 | 0.00 | 18,009.60 | 108,057.60 |
| Crane and operator - 115 ton capacity | 240.00 HR | 0.00 | 460.00 | 0.00 | 22,080.00 | 132,480.00 |
| Backhoe loader and operator | 240.00 HR | 0.00 | 157.76 | 0.00 | 7,572.48 | 45,434.88 |

Based on gathered information, the barn was original to property and built on site using redwood lumber. Based on age this is all true dimensional timber. Estimating to replace with same like, kind, and quality barn.

| | | | | | |
|---|---|---|---|---|---|
| Totals: Barn | | | 14,529.49 | 315,326.98 | 1,891,961.87 |
| Total: Main Level | | | 16,375.05 | 337,332.98 | 2,023,997.59 |

**Level 2**



| Roof1 | | | |
|---|---|---|---|

| | | |
|---|---|---|
| 2,180.80 Surface Area | 21.81 Number of Squares | |
| 198.85 Total Perimeter Length | 32.67 Total Ridge Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

### CONTINUED - Roof1

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Metal roofing | 2,180.80 SF | 0.00 | 8.36 | 300.46 | 3,706.40 | 22,238.35 |
| Totals: Roof1 | | | | 300.46 | 3,706.40 | 22,238.35 |
| Total: Level 2 | | | | 300.46 | 3,706.40 | 22,238.35 |
| Total: Chevalier | | | | 16,675.51 | 341,039.38 | 2,046,235.94 |

### General Items

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **General Conditions For All Buildings** | | | | | | |
| Dumpster load - Approx. 20 yards, 4 tons of debris | 4.00 EA | 852.00 | 0.00 | 0.00 | 681.60 | 4,089.60 |
| General Demolition - per hour | 260.00 HR | 70.48 | 0.00 | 0.00 | 3,664.96 | 21,989.76 |
| Two hours at the end of each day for general clean up and securing the sites. That is only 30 minutes per site. | | | | | | |
| Commercial Supervision / Project Management - per hour | 1,040.00 HR | 0.00 | 93.80 | 0.00 | 19,510.40 | 117,062.40 |
| As there are two homes and a large barn being built there will be a dedicated manager to this job site. | | | | | | |
| **Temporary Repairs** | | | | | | |
| Temporary power - overhead hookup | 1.00 EA | 0.00 | 607.06 | 0.00 | 121.42 | 728.48 |
| Temporary power usage (per month) | 12.00 MO | 0.00 | 224.58 | 222.33 | 583.46 | 3,500.75 |
| Temporary water - usage - per month - Commercial | 12.00 MO | 0.00 | 56.00 | 0.00 | 134.40 | 806.40 |
| Temporary toilet (per month) | 12.00 MO | 0.00 | 158.00 | 0.00 | 379.20 | 2,275.20 |
| Temporary Continous Board Up and Weatherproofing (allowance) | 1.00 EA | 0.00 | 3,000.00 | 0.00 | 600.00 | 3,600.00 |
| Job-site cargo/storage container - 20' long - per month | 12.00 MO | 0.00 | 87.83 | 86.95 | 228.20 | 1,369.11 |
| Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 EA | 0.00 | 99.40 | 16.40 | 43.04 | 258.24 |
| **PERMITS & FEES** | | | | | | |
| Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 10,000.00 | 0.00 | 2,000.00 | 12,000.00 |
| Engineering fees (Bid Item) | 1.00 EA | 0.00 | 10,000.00 | 0.00 | 2,000.00 | 12,000.00 |
| Architectural/Drafting fees (Bid Item) | 1.00 EA | 0.00 | 10,000.00 | 0.00 | 2,000.00 | 12,000.00 |
| Totals: General Items | | | | 325.68 | 31,946.68 | 191,679.94 |
| **Line Item Totals: SMV-CHEVALIER-BARN** | | | | **17,001.19** | **372,986.06** | **2,237,915.88** |



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

| Additional Charges | Charge |
|---|---|
| California Lumber Assessment Fee | 690.16 |
| **Additional Charges Total** | **$690.16** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 3,200.00 | SF Walls | 1,500.00 | SF Ceiling | 4,700.00 | SF Walls and Ceiling |
| 1,500.00 | SF Floor | 166.67 | SY Flooring | 160.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 160.00 | LF Ceil. Perimeter |
| | | | | | |
| 1,500.00 | Floor Area | 1,553.78 | Total Area | 3,200.00 | Interior Wall Area |
| 3,449.33 | Exterior Wall Area | 162.67 | Exterior Perimeter of Walls | | |
| | | | | | |
| 2,180.80 | Surface Area | 21.81 | Number of Squares | 198.85 | Total Perimeter Length |
| 32.67 | Total Ridge Length | 0.00 | Total Hip Length | | |



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 1,847,928.63 |
| California Lumber Assessment Fee | 690.16 |
| Material Sales Tax | 16,897.84 |
| Storage Rental Tax | 103.35 |
| Subtotal | 1,865,619.98 |
| Overhead | 186,562.05 |
| Profit | 186,562.05 |
| **Replacement Cost Value** | **$2,238,744.08** |
| **Net Claim** | **$2,238,744.08** |

_____
Estimator

 **The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CONCRETE & ASPHALT | 3,352.80 | 0.15% |
| CONTENT MANIPULATION | 1,252.76 | 0.06% |
| GENERAL DEMOLITION | 21,732.80 | 0.97% |
| ELECTRICAL | 13,229.59 | 0.59% |
| HEAVY EQUIPMENT | 152,662.40 | 6.82% |
| EXCAVATION | 29,463.86 | 1.32% |
| PERMITS AND FEES | 30,000.00 | 1.34% |
| FRAMING & ROUGH CARPENTRY | 590,377.00 | 26.37% |
| LABOR ONLY | 187,600.00 | 8.38% |
| LIGHT FIXTURES | 418.35 | 0.02% |
| PLUMBING | 6,466.76 | 0.29% |
| PAINTING | 7,232.00 | 0.32% |
| ROOFING | 18,231.49 | 0.81% |
| SIDING | 43,620.80 | 1.95% |
| TIMBER FRAMING | 733,418.00 | 32.76% |
| TEMPORARY REPAIRS | 8,870.02 | 0.40% |
| O&P Items Subtotal | 1,847,928.63 | 82.54% |
| Permits and Fees | 690.16 | 0.03% |
| Material Sales Tax | 16,897.84 | 0.75% |
| Storage Rental Tax | 103.35 | 0.00% |
| Overhead | 186,562.05 | 8.33% |
| Profit | 186,562.05 | 8.33% |
| Total | 2,238,744.08 | 100.00% |



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

Insured:      Spring Mountain Vineyard
Property:     2820 Spring Mountain Road
              Saint Helena , CA 94574

Estimator:    JD Franco

**Claim Number:**                 **Policy Number:**                    **Type of Loss:** Fire

Date Contacted:   10/9/2020 12:00 AM
Date of Loss:     9/27/2020 12:00 AM        Date Received:   10/9/2020 12:00 AM
Date Inspected:   10/12/2020 12:00 AM       Date Entered:    5/1/2021 12:00 AM

Price List:       CASO8X_MAY21
                  Restoration/Service/Remodel
Estimate:         SMV-TRELLIS&VINES



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

### SMV-TRELLIS&VINES

#### Trellis Work

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| **TRELLIS WORK:** | | | | | |
| General Laborer - per hour | 4,800.00 HR | 0.00 | 68.36 | 0.00 | 328,128.00 |
| Six workers, eight hours a day, five days a week, for twenty weeks to install all new trellis. | | | | | |
| Material Only Trellis Material | 804,480. LF 00 | 0.00 | 2.43 | 161,278.13 | 2,116,164.53 |
| Material only. 160 miles of trellis work. | | | | | |
| Specialty Items (Bid Item) - Wewather Station | 15.00 EA | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals: Trellis Work | | | | 161,278.13 | 2,444,292.53 |

#### Irrigation Work

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| **IRRIGATION WORK:** | | | | | |
| General Laborer - per hour | 3,600.00 HR | 0.00 | 68.36 | 0.00 | 246,096.00 |
| Six workers, eight hours a day, five days a week, for fifteen weeks. | | | | | |
| Material Only Sprinkler - drip system | 4,791,600 SF .00 | 0.00 | 0.80 | 316,245.60 | 4,149,525.60 |
| 153 acres which based on rows would half of each acre would have drip system. | | | | | |
| Totals: Irrigation Work | | | | 316,245.60 | 4,395,621.60 |

#### General

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| **GENERAL ITEMS:** | | | | | |
| Dumpster load - Approx. 40 yards, 7-8 tons of debris | 4.00 EA | 1,387.00 | 0.00 | 0.00 | 5,548.00 |
| General Demolition - per hour | 160.00 HR | 70.88 | 0.00 | 0.00 | 11,340.80 |
| Debris removal of burned out materials. | | | | | |
| Commercial Supervision / Project Management - per hour | 600.00 HR | 0.00 | 93.91 | 0.00 | 56,346.00 |
| Supervision for all of irrigation and trellis work. One hour per day, 5 days a week, for 24 weeks. | | | | | |
| Totals: General | | | | 0.00 | 73,234.80 |

 **The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

| Line Item Totals: SMV-TRELLIS&VINES | 477,523.73 | 6,913,148.93 |
|---|---|---|

| Additional Charges | Charge |
|---|---|
| California Lumber Assessment Fee | 10,296.90 |
| **Additional Charges Total** | **$10,296.90** |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Structures | 6,913,148.93 | 100.00% | 6,923,445.83 | 100.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 6,913,148.93 | 100.00% | 6,923,445.83 | 100.00% |

 **The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

## Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 6,435,625.20 |
| California Lumber Assessment Fee | 10,296.90 |
| Material Sales Tax | 477,523.73 |
| **Replacement Cost Value** | **$6,923,445.83** |
| **Net Claim** | **$6,923,445.83** |

JD Franco



**The Greenspan Co./Adjusters International**

400 Oyster Point Blvd #519
South San Francisco, CA 94080

## Recap by Category

| Items | | | Total | % |
|---|---|---|---|---|
| **GENERAL DEMOLITION** | | | **16,888.80** | **0.24%** |
| Coverage: Other Structures | @ | 100.00% = | 16,888.80 | |
| **FENCING** | | | **1,954,886.40** | **28.24%** |
| Coverage: Other Structures | @ | 100.00% = | 1,954,886.40 | |
| **LABOR ONLY** | | | **630,570.00** | **9.11%** |
| Coverage: Other Structures | @ | 100.00% = | 630,570.00 | |
| **LANDSCAPING** | | | **3,833,280.00** | **55.37%** |
| Coverage: Other Structures | @ | 100.00% = | 3,833,280.00 | |
| Subtotal | | | 6,435,625.20 | 92.95% |
| Permits and Fees | | | 10,296.90 | 0.15% |
| Coverage: Other Structures | @ | 100.00% = | 10,296.90 | |
| Material Sales Tax | | | 477,523.73 | 6.90% |
| Coverage: Other Structures | @ | 100.00% = | 477,523.73 | |
| **Total** | | | **6,923,445.83** | **100.00%** |

# EXHIBIT 20

## Jay Spievack

| | |
|---|---|
| **From:** | Jay Spievack |
| **Sent:** | Tuesday, November 2, 2021 12:12 PM |
| **To:** | Mike Vadney |
| **Cc:** | Rebecca.Weinreich@lewisbrisbois.com; Jordon.Harriman@lewisbrisbois.com; Michael Prough; Dean Burnick; Tim Larsen; Jackson Davis; JD Franco |
| **Subject:** | RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI |
| **Attachments:** | 20211102_SCAN.pdf; Statement of loss revised - 11-1-21 (00463548).PDF |

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | Mike Vadney | | |
| | Rebecca.Weinreich@lewisbrisbois.cc | | |
| | Jordon.Harriman@lewisbrisbois.com | | |
| | Michael Prough | | |
| | Dean Burnick | | |
| | Tim Larsen | | |
| | Jackson Davis | Delivered: 11/2/2021 12:12 PM | Read: 1/10/2022 9:30 AM |
| | JD Franco | | |
| | Seavoy Mary | | |
| | Don Yannias | | |
| | Joseph Vann | Delivered: 11/2/2021 12:12 PM | |

Mike,

Per SMV's October 29 letter, attached is SMV's Second Revised Sworn Statement of Proof of Loss and its Revised Statement of Loss.

We look forward to hearing from you regarding a meeting or zoom soon.  In the meantime, please call us if you have any questions.

Best regards,
Jay

Jay B. Spievack

C | T | S | W

Cohen Tauber Spievack & Wagner P.C.
*Partners in Your Strategic Vision*
420 Lexington Ave., Suite 2400
New York NY 10170-2499
Direct: (212) 381-8735
Fax: (212) 586-5095
Email: jspievack@ctswlaw.com
www.ctswlaw.com

1

This communication, including any attachments, is intended solely for the confidential use of the person(s) named above. If you have received this communication in error, please notify the sender immediately and delete/destroy the original. Any reader other than the intended recipient is hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.

**From:** Jay Spievack
**Sent:** Monday, November 01, 2021 5:58 PM
**To:** Mike Vadney <mike.vadney@mclarens.com>
**Cc:** Rebecca.Weinreich@lewisbrisbois.com; Jordon.Harriman@lewisbrisbois.com; Michael Prough <mdp@proughlaw.com>; Dean Burnick <dcb@proughlaw.com>; Tim Larsen <tim@greenspan-ai.com>; Jackson Davis <jdavis@ctswlaw.com>; JD Franco <JD@greenspan-ai.com>
**Subject:** RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Hi Mike,

I hope you had a nice weekend and know you are visiting SMV tomorrow.

As discussed in my email below, we hope that you can coordinate to set up a zoom or conference call with the insurers and their counsel later this week.  Please let us know what works on your end.  Also, we should be able to provide you with the Revised Sworn Proof of Loss and SMV's Statement of Loss tomorrow.  It will reflect (i) the Chevalier Red Barn's damages; (ii) the La Perla Farmhouses' damages; and (iii) the trellises and irrigation systems' increased repair costs.  As you know, SMV also raised an issue about the deductible calculation in its recent letter, but the revised Proof of Loss will reflect the $500,000 deductible until that issue is resolved.  In the meantime, SMV reserves all of its rights, none of which are waived.

Best regards,
Jay




Jay B. Spievack

C | T | S | W

Cohen Tauber Spievack & Wagner P.C.
_Partners in Your Strategic Vision_
420 Lexington Ave., Suite 2400
New York NY 10170-2499
Direct: (212) 381-8735
Fax: (212) 586-5095
Email: jspievack@ctswlaw.com
www.ctswlaw.com



This communication, including any attachments, is intended solely for the confidential use of the person(s) named above. If you have received this communication in error, please notify the sender immediately and delete/destroy the original. Any reader other than the intended recipient is hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.

**From:** Mike Vadney <mike.vadney@mclarens.com>
**Sent:** Friday, October 29, 2021 1:15 PM
**To:** Jay Spievack <jspievack@ctswlaw.com>
**Cc:** Rebecca.Weinreich@lewisbrisbois.com; Jordon.Harriman@lewisbrisbois.com; Michael Prough <mdp@proughlaw.com>; Dean Burnick <dcb@proughlaw.com>; Tim Larsen <tim@greenspan-ai.com>; Jackson Davis <jdavis@ctswlaw.com>; JD Franco <JD@greenspan-ai.com>
**Subject:** RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Jay:

Thank you for your email and I will review all of the documents over the weekend.

We will advise all of your request for discussion and get it set up.

Thanks and have a great weekend!!!

This email is intended as an explanation of the handling of this claim and does not waive the rights of any party under the terms, conditions and/or provisions of the policy of Insurance or applicable law.

**Mike Vadney** | McLarens
Vice President | Senior Executive General Adjuster
mike.vadney@mclarens.com

9121 Atlanta Ave., #611
Huntington Beach, CA  92646
+1 714.747.0532 | cell
÷1 818.265.0277 | office

CONFIDENTIALITY AND PRIVILEGE NOTICE: The information contained in this message and any attachments may be privileged, confidential and/or exempt from disclosure under applicable law. Any views expressed in this message and any attachments are those of the individual sender, except where the message states otherwise, and in no way binds insurers and/or its representatives. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of any information contained herein or attached is strictly prohibited. If you have received this email in error, please immediately notify the sender and destroy the original transmission and its attachments, without reading them.

**From:** Jay Spievack <jspievack@ctswlaw.com>
**Sent:** Friday, October 29, 2021 10:00 AM
**To:** Mike Vadney <mike.vadney@mclarens.com>
**Cc:** Rebecca.Weinreich@lewisbrisbois.com; Jordon.Harriman@lewisbrisbois.com; Michael Prough <mdp@proughlaw.com>; Dean Burnick <dcb@proughlaw.com>; Tim Larsen <tim@greenspan-ai.com>; Jackson Davis <jdavis@ctswlaw.com>; JD Franco <JD@greenspan-ai.com>
**Subject:** RE: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Mike,

Please see the attached letter and accompanying exhibits.

We understand that other insurers' representatives and you will be conducting a site visit next Tuesday. You are invited to add the buildings and structures discussed in this letter to your visit agenda. In addition, Tim and I would like to have a conference call or zoom with you and Mt. Hawley's attorneys after your site visit next week (perhaps Wednesday 11/3 or Thursday 11/4) to discuss these claim items and other issues. Although we have not been formally introduced to Rebecca and Jordan, we suspect that they are representing one or more insurers and so they too are invited to attend unless our assumption is completely wrong. How would Thursday 11/4 at 2 pm ET and 11 am PT work for everyone?

We look forward to speaking to all of you next week. In the meantime, please contact us if you have any questions or comments.

Best regards,
Jay

Jay B. Spievack



Cohen Tauber Spievack & Wagner P.C.
*Partners in Your Strategic Vision*
420 Lexington Ave., Suite 2400
New York NY 10170-2499
Direct: (212) 381-8735
Fax: (212) 586-5095
Email: jspievack@ctswlaw.com
www.ctswlaw.com

This communication, including any attachments, is intended solely for the confidential use of the person(s) named above. If you have received this communication in error, please notify the sender immediately and delete/destroy the original. Any reader other than the intended recipient is hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.

**From:** Mike Vadney <mike.vadney@mclarens.com>
**Sent:** Wednesday, September 29, 2021 8:00 PM
**To:** Tim Larsen <tim@greenspan-ai.com>
**Cc:** Jay Spievack <jspievack@ctswlaw.com>; Weinreich, Rebecca <Rebecca.Weinreich@lewisbrisbois.com>; Harriman, Jordon <Jordon.Harriman@lewisbrisbois.com>
**Subject:** FW: Spring Mountain Vineyards Inc. - McLarens File No.: 001.024327.MI

Tim:

We hope this email and attachment find you doing well.

We present the attached position letter for those Insurers' identified within the letter. Upon your review, please feel free to contact me with any questions.

Have you been able to speak with Mr. Glenister as to the timing of the Time Element claim? We would like to receive this component to begin our audit and evaluation. Further, we had sent the revised Shop bid and ask if the Insured is in agreement.

This email and attachment are intended as an explanation of the handling of this claim and does not waive the rights of any party under the terms, conditions and/or provisions of the policy of Insurance or applicable law.

**Mike Vadney** | McLarens
Vice President | Senior Executive General Adjuster
mike.vadney@mclarens.com

9121 Atlanta Ave., #611
Huntington Beach, CA  92646
**+1 714.747.0532 |** cell
**+1 818.265.0277 |** office

CONFIDENTIALITY AND PRIVILEGE NOTICE: The information contained in this message and any attachments may be privileged, confidential and/or exempt from disclosure under applicable law. Any views expressed in this message and any attachments are those of the individual sender, except where the message states otherwise, and in no way binds Insurers and/or their representatives. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of any information contained herein or attached is strictly prohibited. If you have received this email in error, please immediately notify the sender and destroy the original transmission and its attachments, without reading them.

PRIVACY STATEMENT: We are required to capture and process personal information supplied to us in the fulfilment of our services. Our obligations vary depending on the jurisdiction involved. For further details as to how this information is used, kept secure and your rights, please see the relevant Privacy Statement on our website – https://www.mclarens.com/privacy-policy/

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

## SWORN STATEMENT IN PARTIAL PROOF OF LOSS

| ESP 2004861 00 | | See Below* | |
|---|---|---|---|
| (POLICY NUMBER) | | Carriers | |
| See Below* | | 001.024327.MI | |
| (POLICY AT TIME OF LOSS) | | McLaren File Number | |
| 7/1/2020 | | September 27, 2021 | |
| (Date of Inception) | | Date of Loss | |
| 7/1/2021 | | Arthur J Gallagher | |
| (Date of Expiration) | | Broker | |

At time of loss, by the above indicated policy of insurance you insured: Spring Mountain Vineyard Inc.

Against loss by **All Risk** to the property described according to the terms and conditions of the said policy and all forms,

1.   **Time and Origin**: An insurable loss occurred on **September 27, 2020**  The cause and origin of the said loss were: **Fire**

2.   **Occupancy**: The building described, or containing the property described, was occupied at the time of the loss as  follows and for no other purpose whatever: Winery

3.   **Title and Interest**: At the time of the loss the interest of your insured in the property described therein was **Owner**. No other person or persons had any interest therein or incumbrance thereon, except: MGG California LLC, as Collateral

4.   **Changes**: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: **None.**

5.   **Total Insurance**: The total amount of insurance upon the property described by this policy was, at the time of the loss, **as described more fully in the declaration page of the policies See Below***

| | | |
|---|---|---|
| 6.   The Actual Cash Value of said property at the time of the loss was: | | **Undetermined at this time** |
| 7.   The Loss and Damage to Building: | | **$38,532,411.11*** |
| 8.   The Loss due to Business Interruption: | | **TBD** |
| 9.   The Amount Claimed under the above numbered policy is: | = | $38,532,411.11 |
| 10. Less Amount of Deferment / Holdback | - | N/A |
| 11. Actual Cash Value of Loss: | | **TBD** |
| 12. Less Amount of Deductible: | - | TBD |
| 13. Advance Payment | - | **$7,508,855.85** |
| 14. Net Remaining Balance including Withheld Depreciation | = | **$31,023,555.26** |

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this Proof of Loss by the insured is not a waiver of any of its rights it may have under the policy or at law.

State of

_ILLINOIS_

County of _COOK_

Subscribed and sworn before me this ____ day of _November_ 20 _21_

_Christine Serdar_ Notary Public

Insured _[signature]_   PRESIDENT   SPRING MTN VINEYARD INC

My commission Expires _June 12, 2022_

*Landmark Insurance Company, Policy Number: LHD425938, Claim Number: 7030150863  Kinsale Insurance Company, Policy Number: 100
First Specialty Insurance Company, Policy Number ESP2004861 00, Claim Number 20201448295 Lloyds Policy Number W2BCE9200101, C
**See attached spreadsheet for a breakdown of the claim and its accompanying documentation



CHRISTINE SERDAR
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
June 12, 2022

| DATE: 08/18/2021 | | | |
|---|---|---|---|
| INSURED: Spring Mountain Vineyard, Inc. | | | |
| DATE OF LOSS: September 27, 2020 | **STATEMENT OF LOSS - BUILDING ACV/RCV** | | |
| CAUSE OF LOSS: CAT 2068 Glass Fire | **and LOSS OF RENTS** | | |
| LOSS LOCATION: Per Schedule of Values | | | |
| INSURERS FILE NUMBERS: Per SOI | | | |
| MCLARENS FILE NO.: 001.024327.MI | | | |

| LINE OF COVERAGE | | VALUE | LOSS | CLAIM |
|---|---|---|---|---|
| ITEM AS DESCRIBED: BUILDING | | | | |
| Loss as Determined: BUILDING | | | | |
| 1. BUILDINGS: | | | | |
| | | | | |
| La Perla Winery | | | | $ 19,316,701.76 |
| La Perla House | | | | $ 2,387,412.52 |
| 2. REPAIR OF BUILDINGS | | | | |
|    A. Building 4, Miravelle Mechanical Shop | | | | |
|      Less: Depreciation | | | | |
|      Building 4, Mechanical Shop ACV | | | | $ 578,796.53 |
|    B. Building 6, Miravelle Greenhouse | | | | |
|      Less: Depreciation | | | | |
|      Building 6, Miravelle Greenhouse ACV | | | | $ 171,644.73 |
|    C. Building 10, Alba Winery Buildings | | | | $ 741,474.47 |
| La Perla Farmhouses - Total Loss | | | | $996,074.48 |
| Chevalier Red Barn - Total Loss | | | | $2,238,744.08 |
| La Perla Red Barn - Total Loss | | | | $ 2,608,338.32 |
| 3. CLEANING OF BUILDINGS | | | | |
|    A. Building 1, Miravelle Winery/Office | | | | $ 314,732.00 |
|    B. Building 2, Miravelle Victorian House | | | | $ 176,000.00 |
|    C. Building 3, Miravelle Cottage | | | | $ 33,000.00 |
|    D. Building 4, Miravelle Mechanical Shop | | | | $ 66,000.00 |
|    E. Building 5, Miravelle Barn | | | | $ 83,600.00 |
|    F. Building 6, Miravelle Greenhouse | | | | $ 9,900.00 |
|    G. Building 7, Miravelle Cave | | | | $ 442,398.00 |
|    H. Building 8, Historic Winery | | | | $ 292,600.00 |
| 4. UNNAMED LOCATIONS | | | | $ 100,000.00 |
| 5. Young and Associates, Painting bid | | | | |
| 6. Cleaning BPP - See Breakdown Below | | | | $ 787,692.35 |
| Trellis - Irrigation | | | | $ 6,923,445.83 |
|    Painting at ACV | | | | $ 263,856.04 |
| Building Claim at ACV Gross | | $ - | | $ 19,215,709.35 |
| Less: Fire Occurrence Deductible | | | | $ (500,000.00) |
| Building Claim at ACV Net | | | | $ 18,715,709.35 |

INSURED:  Spring Mountain Vineyard, Inc.
DATE OF LOSS: March 8, 2021
Page 2 of 2

ITEM AS DESCRIBED: BUSINESS PERSONAL
PROPERTY ("BPP")
Loss as Determined: BPP
1.  BPP Cleaning

| | | | | | |
|---|---|---|---|---|---|
| a.  Building 1, Miravelle Winery, Office | | $ | 85,836.00 | $ | 85,836.00 |
| b.  Building 2, Miravelle Victorian House | | $ | 49,000.00 | $ | 49,000.00 |
| c.  Building 3, Miravelle Cottage | | $ | 9,000.00 | $ | 9,000.00 |
| d.  Building 4, Miravelle Mechanical Shop | | $ | 18,000.00 | $ | 18,000.00 |
| e.  Building 5, Miravelle Barn | | $ | 22,800.00 | $ | 22,800.00 |
| f.  Building 7, Miravelle Cave | | | | | |
| 1.  Cleaning Barrels | | $ | 306,030.94 | $ | 306,030.94 |
| 2.  Cleaning Inventory | | $ | 176,371.41 | $ | 176,371.41 |
| 3.  Cleaning General | | $ | 120,654.00 | $ | 120,654.00 |
| | | $ | 787,692.35 | $ | 787,692.35 |

# EXHIBIT 21



## COHEN TAUBER SPIEVACK & WAGNER P.C.

Jay Spievack

direct:  212-381-8735
e-mail:  jspievack@ctswlaw.com

January 12, 2022

**Via Email**

Dean C. Burnick, Esq.
Prough Law APC
1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596

Jordan E. Harriman, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
633 West 5th Street Suite 4000
Los Angeles, California 90071

*Re:*   ***Spring Mountain Vineyard-Glass Fire Claim: Insurers File No: 001.024327.MI***

Dear Dean and Jordan:

This letter supplements Spring Mountain Vineyards, Inc.'s ("SMV") October 29 and November 2, 2021, responses to McLarens' September 29, 2021, letter, sent on certain excess insurers' behalf.[1]  For the reasons more fully discussed below, SMV demands that within 30 days, certain excess insurers pay it the replacement costs needed to fully repair and replace property damage that SMV sustained at its covered property due to the Glass Fire.  The payments required are: (i) $2,340,465.14 from Landmark/Kinsale, which represents their remaining 2020-21 reduced policy limit for their $5 million combined first layer excess property policy; (ii) Mt. Hawley's full $10 million policy limit for its 2020-21 second layer excess property policy; and (iii) $9,153,414.20 of Hallmark Specialty/Western World's 2020-21 $10 million combined third layer excess property policy.[2]

---

[1] The excess insurers are Landmark American Insurance Company ("Landmark"), Kinsale Insurance Company ("Kinsale"), Mt. Hawley Insurance Company ("Mt. Hawley"), Hallmark Specialty Insurance Company ("Hallmark Specialty"), Western World Insurance Company ("Western World"), and AXIS Surplus Insurance Company ("AXIS") (collectively, the "Insurers").  The September 29 letter set forth the excess insurers' coverage positions except Mt. Hawley's.  They all, however, retained McLarens to investigate and adjust SMV's Glass Fire-related losses, and McLarens has acted as their agent in relation to all activities since the Glass Fire.

[2] Landmark and Kinsale previously paid SMV $2,659,534.86.  SMV demands that they now pay their full $5 million 2020-21 combined property policy limit, which will exhaust their coverage obligation.  SMV reserves all rights against AXIS should its proven replacement costs exhaust Hallmark Specialty/Western World's $10 million combined third layer property policy and refers the Insurers to (i) the 2020-21 Property Policies for the "replacement costs" definition and calculations; and (ii) SMV's November 2, 2021, revised Statement of Loss, prepared by Greenspan.

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 2 of 11

There is no dispute that SMV purchased and paid the 2020-21 property insurers for the property policies at issue for the policy period July 1, 2020 to July 1, 2021 (the "2020-21 Property Policies").[3]  It is also undisputed that SMV sustained property damage and losses at its covered property due to a covered peril, a wildfire, which occurred on September 27, 2020.

In early October 2020, AJ Gallagher ("AJG") emailed the purported 2020-21 Property Policies to SMV but stated that it had not reviewed them for accuracy.  In an October 13, 2020 conference call, AJG stated that it still had not reviewed the purported 2020-21 Property Policies; however, it also (i) confirmed that on June 30, 2020, prior to requesting that SMV bind its 2020-21 property coverage, it told SMV that the 2020-21 Property Policies would provide blanket coverage for all vineyard property damage; and (ii) told SMV and its representatives that 2020-21 Property Policies did, in fact, provide blanket coverage for property damage and losses at SMV's covered vineyard property.

SMV also hired Greenspan to help it calculate its losses after the Glass Fire.  On October 14, 2020, Greenspan met McLarens at the vineyards to survey SMV's property and inspect the damage.  During that site visit, SMV and McLarens agreed that the property damages and losses at the site likely exceeded $20 million.[4]  Greenspan also told the 2020-21 Property Insurers' agent that SMV had blanket property coverage.  In a follow up email later that day, Greenspan reported that "the carriers are taking the position that if it is not a structure listed/detailed on the Statement of Values it is not something the carriers will consider indemnity for."  Greenspan, however, stated that its "preliminary review of the policy suggests that there is coverage" and that SMV "will be making claim for all structures associated/supporting the insured locations listed on the Statement of Values you had today."

Shortly after October 14, Greenspan told SMV that McLarens did not believe the 2020-21 Property Policies provided blanket coverage.  Since AJG had not completed its accuracy check, SMV requested that AJG work with the 2020-21 Property Insurers to correct the Property Policies and ensure, among other things, that they provided the blanket property coverage that AJG represented it had secured.

The 2020-21 Property Insurers have not provided SMV with their underwriting files and AJG never certified whether the purported 2020-21 Property Policies that it forwarded to SMV, in fact, accurately reflected property coverage that AJG represented it purchased for SMV.

---

[3] In addition to the Insurers' excess property policies, the 2020-21 Property Policies included the primary property policy that First Specialty Insurance Corporation ("First Specialty") issued to SMV.  It is undisputed that the First Specialty's primary policy's $5 million policy limit is exhausted, and it is not a party to this coverage dispute.  In this letter, First Specialty together with the Insurers are referred to collectively as the "2020-21 Property Insurers."

[4] SMV presumes that, on or around the October 14, 2020, site visit, McLarens also provided the Insurers with a written report that summarized its discussions with Greenspan, and its $20 million+ actual property damage assessment.  Regardless, McLarens' knowledge is imputed to the 2020-21 Property Insurers since they retained it to investigate and adjust SMV's losses.



Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 3 of 11

Therefore, SMV continues to investigate whether (i) the 2020-21 Property Insurers should have provided blanket property coverage; and (ii) the property policies in its possession should be reformed or revised to provide blanket property coverage.[5]  SMV reserves all rights against the Insurers under the 2020-21 Property Policies, at law and/or in equity, none of which have been waived.

### The 2020-21 Property Policies

Leaving aside whether the 2020-21 Property Policies should have provided SMV with blanket property coverage, the Insurers' proffered interpretation of their respective limitation of liability provisions is, at best, disingenuous.  The provisions unambiguously show that the Landmark/Kinsale combined $5 million 2020-21 property policy limit is exhausted and Mt. Hawley must pay SMV at least $8,376,009.33 under its 2020-21 excess property policy.

The Landmark and Kinsale combined 2020-21 property policies state, in relevant part, that:

In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence."

    a.  The actual adjusted amount of loss, less the applicable deductible(s),

    b.  The total stated value for the property involved, as shown on the latest Statement of Values on file with us, less applicable deductible(s),

    c.  The Limit of Liability or Limit of Insurance shown on the face of this Policy or endorsed onto this Policy.[6]

Landmark and Kinsale maintain that, pursuant to subpart b above, they are not obligated to pay SMV for any of the La Perla Winery's $14,516.701.76 in replacement costs because SMV's Statement of Values limits all coverage at that covered property to $4.8 million and First Specialty already paid that amount in full.[7]

---

[5] Blanket property coverage means that the policy or policies together will cover any repair and replacement costs at a covered property up to the applicable aggregate policy limit, regardless of the covered property's individual value listed on SMV's Statement of Values.  Had anyone informed SMV that blanket coverage was not available for its 2020-21 property policies, SMV would have, among other things, substantially increased its individual property values on its Statement of Values.

[6] In their September 29 coverage letter, Landmark misquotes its applicable limitation of liability provision. Specifically, an endorsement modified Landmark policy's limitation of liability provision cited in that letter, and the language in the endorsement mirrors the limitation of liability provision in the 2020-21 Kinsale property policy.

[7] On its Statement of Loss, SMV states that the destroyed La Perla Historic Winery's replacement costs will total $19,316,701.76.  It is undisputed that the La Perla Historic Winery building is covered property and First Specialty

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 4 of 11

Subpart b, however, *only* states that Landmark/Kinsale's collective liability for the La Perla Winery replacement costs is limited to $4.8 million under *their* $5 million combined excess property policy.[8]  It does not permit Landmark/Kinsale to deduct First Specialty's $4.8 million payment from their combined payment obligation.  Had Landmark and Kinsale intended their proposed policy construction, they could have written this provision to read "liability of the Company shall be limited to the stated value for the property involved, as shown on the latest Statement of Value on file with us, less the applicable deductible, and the Company's obligation to pay the stated value for the property involved also will be reduced by the amount of any underlying insurer's payment for that property."  Landmark and Kinsale did not include any such language, and their tortured reading of subpart b must fail.

Therefore, subpart c of the Landmark/Kinsale limitation of liability provisions apply to SMV's Glass Fire-related damages, and not subpart b.  Landmark/Kinsale not only must pay $4.8 million to SMV for the La Perla Winery replacement costs, but also SMV's damage to other undisputed covered property which exceeds $200,000 or the remaining insurance proceeds in the Landmark/Kinsale $5 million 2020-21 first layer excess property policy.[9]

Thus, interpreted properly, the Landmark/Kinsale 2020-21 property policy's limitation of liability provisions show that (i) the first $10 million in policy coverage would be exhausted because, in addition to their $4.8 million La Perla Winery payment, Landmark/Kinsale is obligated to pay $200,000 to compensate SMV for property damage and losses at the other covered property where the parties do not dispute coverage (*see* the Insurers' September 29 letter at pp.1-3); and (ii) the Mt. Hawley property policy, which provides the next $10 million for covered property damage between $10 million and $20 million, would be triggered.

The Mt. Hawley limitation of liability endorsement provides, in relevant part, that:

If there is a loss under this policy, Mt Hawley will not pay more than the least of the following:

1. The actual adjusted amount of loss, minus the deductible(s) that applies:

---

[8] paid $4.8 million to SMV for the property damage and losses that SMV sustained at that property due to the Glass Fire, which left $14,516,701.76 in unreimbursed replacement costs less SMV's $500,000 wildfire deductible.

[8] Absent their respective limit of liability provisions, Landmark and Kinsale would have to pay their entire $5 million combined policy limit to SMV because the La Perla Winery replacement costs that remain exceeded their aggregate policy limit.

[9] In their September 29 coverage letter, the Insurers acknowledge that the losses sustained at other covered property exceed $400,000 (*see* pp.1-3).  Since First Specialty paid $4.8 million to cover the La Perla Winery replacement costs, its $200,000 payment covered certain losses sustained at other covered property, and the same should be true for the payment of insurance proceeds under the Landmark/Kinsale 2020-21 first layer excess property policy.

{00467628.DOCX; 2}

$$C \mid T \mid S \mid W$$

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 5 of 11

2.  The Limit of Insurance or the amount of insurance shown in the Declarations pages of this policy or endorsed onto this policy; or

3.  The stated value for the property involved in the loss as shown on the latest statement of values on file with us, minus the deductible(s) that applies.

Mt. Hawley's subpart 3 also cannot be read to eliminate its liability for the La Perla Winery replacement costs. Mt. Hawley's limitation of liability provision also *only* limits its *own* payment obligation for any La Perla Winery losses to $4.8 million.

Therefore, the first four insurers (First Specialty, Landmark/Kinsale and Mt. Hawley) should collectively have paid $14,400,000 to SMV for the La Perla Winery replacement costs, leaving $4,016,701.76 in La Perla Winery replacement costs still unpaid if the Insurers also improperly deduct SMV's $500,000 wildfire deductible. As you both know, however, so far First Specialty is the only 2020-21 Property Insurer to honor its obligation to pay SMV for some La Perla Winery replacement costs.

We note that, absent Mt. Hawley's limitation of liability provision at subpart 3, Mt. Hawley would have to pay SMV's La Perla Winery replacement costs up to at least $8,816,701.76 if its policy provided $10 million in blanket property coverage. Moreover, the Mt. Hawley $10 million 2020-21 property policy limit would be exhausted because Mt. Hawley also would be obligated to pay its remaining $1,183,298.24 in policy proceeds to compensate SMV for its damages and losses at the other covered property where coverage is undisputed.

Mt. Hawley's $10 million 2020-21 property policy limit, however, *only* will be reduced to $5.2 million after it pays its full $4.8 million liability limitation that attaches to the La Perla Winery replacement costs. Mt. Hawley's $5.2 million reduced policy limit will, at minimum, be reduced because it must pay SMV for the $3,176,009.33 in property damage at SMV's other covered buildings and structures where no coverage dispute exists (*see* Insurers' September 29 letter at pp.1-3).[10]

Accordingly, Mt. Hawley should, at minimum, pay **$8,376,009.33** to compensate SMV for the property damage and losses that it sustained at covered property due to the Glass Fire after Landmark/Kinsale pay their full **$2,340,465.14** reduced policy limit, which payment will fully compensate SMV for $4.8 million combined first layer excess La Perla Winery liability policy limit plus the additional $200,000 to compensate SMV for some of its losses at its other undisputed covered property.[11]

---

[10] The Insurers disputed SMV's $578,769.53 replacement cost claim for Miravelle Shop. During his examination under oath, however, Ron Rosenbrand testified about significant damages to Miravelle Shop that the Insurers' $102,745.32 payment did not cover and should be paid since it is undisputed that the Shop appears on SMV's 2020-21 Statement of Values.

[11] The 2020-21 Property Policies provide that a New York state or federal court must resolve all coverage disputes and must apply New York law. Pursuant to New York law, SMV can allocate the 2020-21 Property Insurers'

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 6 of 11

In sum, the correct and fair interpretation of their respective 2020-21 property policies requires Landmark/Kinsale and Mt. Hawley to pay together, at least, an additional **$10,716,474.47** to compensate SMV for property damage and losses sustained at its covered property. SMV requests that Landmark and Kinsale pay its $2,340,465.14 remaining policy limit, and that Mt. Hawley pay, at minimum, the $8,376,009.33 for the damages referenced or, alternatively, its full policy limit, within 30 days, for the reasons set forth herein.[12]

## Disputed Covered Property

As stated above, Mt. Hawley's 2020-21 excess property policy would be exhausted if AJG either (i) secured the blanket property coverage; or (ii) informed SMV that it was unable to secure blanket coverage and advised SMV to (a) raise its outdated individual property values on its 2020-21 Statement of Values; and (b) add non-listed vineyard property to its Statement of Values.

In its November 2, 2021, Statement of Loss, SMV requested payment of $11,770,559.90 in replacement costs for property damage and losses to the following properties: (a) the Chevalier Red Barn ($2,238,744.08); (b) the La Perla Red Barn ($2,608,338.32); and (c) SMV's trellises and irrigation systems ($6,923,445.83).[13] The Insurers maintain that these properties are not covered because they are not listed on SMV's Statement of Values.

The 2020-21 Property Policies incorporate First Specialty's primary policy's "covered property" definition, which not only includes buildings and structures described in the Declarations, but also includes, among others, (i) completed additions; (ii) fixtures, including

---

payments to maximize coverage for damaged or destroyed property. This means that for the $400,000 left in the First Specialty primary policy and the Landmark/Kinsale combined first layer excess property policy (after La Perla Winery payments) should be charged to pay $216,474.75 for the Alba Winery buildings #1-2 replacement costs and $183,525.25 to cover some of the additional Miravelle Shop replacement costs. Mt. Hawley's payments presumably would then cover the remaining respective replacement costs to repair and replace these covered property unless such costs increase prior to its payment.

[12] The Insurers must pay SMV's replacement costs for any property damage or losses to covered property due to a covered peril. Mt. Hawley has spent significant time trying to elicit information about what SMV has spent to repair or replace damaged property during its examinations under oath. SMV will continue to provide this information but note that it is not relevant to the issue of what the Insurers are required to pay pursuant to the 2020-21 Property Policies. SMV also notes that the Insurers' failure to timely honor their policy obligations to SMV and pay its full repair and replacement costs has severely hindered SMV's efforts to repair its damaged property.

[13] The dollar amounts listed in each parenthetical above are the estimated replacement cost for each of the above-referenced properties or structures, and appear on SMV's November 2, 2021, Statement of Loss. For SMV's trellises and irrigation damages, Greenspan also broke down its estimated replacement costs as follows: (i) $3,046,316.17 for the trellises and irrigation systems at the La Perla Winery; (ii) $1,246,220.25 for the trellises and irrigation systems at the Chevalier Winery; and (iii) $2,492,440.54 for the trellises and irrigation systems at the Miravelle Winery. SMV notes that its current replacement costs are subject to modification for, among other things, supply chain issues, increased labor and/or materials costs, and inflation.

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 7 of 11

outdoor fixtures; and (iii) permanently installed: (a) machinery; and (b) equipment.  Recognizing that the broad "covered property" definition did not support their initial October 14, 2020, coverage position, the Insurers subsequently claim that "completed additions," "outdoor fixtures," and "permanently installed equipment" must be "appurtenant to or attached to" an identified building or structure and/or "service" that building or structure (*see* Insurers' September 29 Letter at p.7).  Mt. Hawley also suggests that crop policies and not property policies cover trellises and irrigation systems.

The Insurers' arguments are incorrect and fail for several reasons.  First, the 2020-21 Property Policies do not so limit First Specialty's "covered property" definition.  Second, the Policies also do not exclude or have a sublimit for trellises and irrigation systems.

Had he been asked to during his examination under oath, Greenspan's Tim Larsen would have testified about issues relevant to the Insurers' above-referenced claims.  According to Mr. Larsen, the 2020-21 Property Policies were not winery property policies but standard commercial property policies that were stitched together at the last possible moment for SMV.  Based on his experience, Larsen states that the Insurers' interpretation of the "covered property" definition is incorrect because winery property policies that intend to limit that definition provide that "completed additions," "outdoor fixtures," and "permanently installed equipment" must be "appurtenant to or attached to" an identified building or structure and/or "service" only that building or structure.  In contrast, the 2020-21 Property Policies contain no such language that limits the "covered property" definition in this manner.

Mr. Larsen also states that a winery property policy that intended to limit or exclude trellises and irrigation systems would have provided for such limitation or exclusion in the policy.[14]  Absent such language, winery policies are deemed to cover trellises and irrigation systems.

Greenspan's coverage analysis notwithstanding, the 2020-21 Property Policies do not contain language supporting the Insurers' proffered interpretation of covered property.  Therefore, under New York law, the "covered property" language must be broadly interpreted to support coverage, if possible, for the Chevalier Red Barn, the La Perla Red Barn and SMV's trellises and irrigation systems.

The destroyed Chevalier Red Barn was, for example, a "completed addition" to the Chevalier Historic Winery.  The Chevalier Historic Winery is listed on SMV's 2020-21 Statement of Values at a value of $3.2 million.  As you know, before it moved all wine processing operations to Miravelle (or Spring Mountain), SMV conducted some of its wine making and processing operations in the Chevalier Historic Winery building and stored wine crushing and processor equipment used for harvested grapes in that building. This wine crushing

---

[14] Under such circumstances, a winery owner will then buy additional coverage for its trellises and irrigation systems, which may or may not be an endorsement to a crop policy.

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 8 of 11

and processor equipment includes conveyors belts, sorting tables and assorted machinery used for wine processing.  The facility also stored all microbins used at the Chevalier Winery.

The Chevalier Red Barn was reconstructed to support and services the operations carried out in the Chevalier Historic Winery Building.  The Chevalier Red Barn stored wood wine case boxes, wine bottles and labels that SMV used its wine making and processing operations conducted in the Historic Winery building.  Moreover, the wood Chevalier wine case boxes were placed in, among other places, the ancillary Chevalier Red Barn for safe keeping and shipping after the wines were bottled and labeled in the Chevalier Historic Winery building.  The Chevalier Barn also stored other winery supplies and a generator that provided power for both the Historic Winery building and the Chevalier Red Barn during any power outage.

The Chevalier Red Barn not only serviced the Historic Winery Building's operations, but also was reconstructed to support the Building itself as an appurtenant structure.  The Barn and the Building share electricity and their electrical systems were intertwined, including a common breaker board for both structures. To get adequate water to the Chevalier Historic Winery Building, water pipes, associated plumbing and equipment had to be routed through or under the Red Barn.

Therefore, the Chevalier Red Barn was reconstructed to support and service the Chevalier Historic Winery building and its operations.  Prior to the Glass Fire, it continued to service the Chevalier Historic Winery building's operations and also serviced the Miravelle Winery buildings' operations that involved, among other things, the use of Chevalier produced grapes.[15]

Therefore, the Chevalier Red Barn meets First Specialty's "covered property" definition because it is a "completed addition" and Mt. Hawley should cover its replacement costs.[16]

It also cannot be disputed that SMV's trellises and irrigation systems are "covered property" because they are "permanently installed equipment" and/or "outdoor fixtures" that supported and continue to support the winery operations at the Historic Winery buildings listed

---

[15] SMV has not conducted wine making and processing operations at the Chevalier Historic Winery since it moved those operations to Miravelle.  That, however, does not mean the Chevalier Red Barn was not originally reconstructed to add to and support the Winery buildings' operations and was, and should still be considered a "completed addition."  Additionally, prior to the Glass Fire, the Chevalier Red Barn continued to be an ancillary operation for the Chevalier Historic Winery building while also servicing the wine processing and making operations at the Miravelle covered property.  The Chevalier Red Barn supported the Winery buildings' respective wine making production and processing operations.

[16] The destroyed La Perla Red Barn also meets First Specialty's "covered property" definition. Here too, the Barn was reconfigured to provide similar services to the La Perla Historic Winery's operations, and subsequently the Miravelle Winery operations as well.

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 9 of 11

on SMV's Statement of Values.  SMV's trellises and irrigation systems share water and electricity with the Historic Winery buildings.  They serviced and continue to service both the historic buildings' operations and the Miravelle Winery buildings' operations that involve, among other things, the use of the historic winery's various grapes.[17]  They also serviced the Historic Winery buildings' wine processing and making operations and continue to service the Miravelle Winery building's wine making and processing operations today.  They are integrally related to these operations, and none of the Winery buildings' operations (either today or historically) would have occurred without them.

**The Insurers' Payments for Covered Property**

The Mt. Hawley required payments above (at pp.5-6, *supra*) will reduce its $10 million excess property policy's limit to $1,623,990.67.  Additionally, the proper interpretation of Mt. Hawley's 2020-21 excess property policy's limitation of liability provision means that it already will have paid $292,600 to SMV to clean the Chevalier Historic Winery building.[18]  Since the $2,238,744.08 needed to repair or replace the destroyed Chevalier Red Barn exceeds what is left in its policy, Mt. Hawley only has to pay $1,623,990.67 to SMV towards the destroyed Red Barn's still unpaid replacement costs pursuant to subpart b of its liability limitation provision.  That payment will exhaust Mt. Hawley's $10 million 2020-21 property policy's limit and trigger the combined $10 million Hallmark Specialty/Western World 2020-21 property policies to cover remaining Glass Fire damages.

The Hallmark Specialty/Western World "Occurrence Limit of Liability Endorsement" provides, in relevant part, that:

1.  In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence."

    a.  The actual adjusted amount of loss, less the applicable deductible(s) and the primary and excess limits;

    b.  The individually stated value for each scheduled unit of Insurance for Building, Personal Property, Time Element or other coverage at the location which had loss shown on the latest Statement of Values on file with the Company, less applicable deductible(s) and the primary and underlying excess limits.  If no value is shown for a scheduled item then there is no coverage for that item; or

---

[17] According to SMV's vineyard manager, the grapes produced at La Perla, Chevalier, Alba and Miravelle are different and each one's products are essential to SMV's various wine production operations since it makes several different types of wine.

[18] The individual property value for Chevalier listed on SMV's Statement of Values was $3.2 million, which was reduced to $2,907,400 after the $292,600 paid for cleaning.  The Insurers incorrectly attribute this cleaning payment to the Miravelle Historic Winery in its September 29 coverage letter (p.2), and not the Chevalier Historic Winery.

$$C \mid T \mid S \mid W$$

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 10 of 11

    c.   The Limit of Liability as shown of the Declaration page of this policy or as endorsed to this policy.

First, the Hallmark Specialty/Western World liability limit clearly would require payment of the final $4,016,701.76 for the La Perla Winery's replacement costs.  Subpart 1.a requires Hallmark Specialty/Western World to make this combined payment because it is less (i) the applicable $500,000 wildfire deductible; (ii) First Specialty's $4.8 million payment that exhausted its La Perla Winery primary policy limit; (iii) Landmark/Kinsale's $4.8 combined payment that exhausted their respective La Perla Winery first layer excess policy limit; and (iv) Mt. Hawley's $4.8 million payment that exhausted its La Perla Winery second layer excess policy limit.  This payment also would reduce Hallmark Specialty/Western World's La Perla Winery limit to $783,298.24 which, pursuant to subpart 1.b, would be used to pay some of the replacement costs still required to repair and replace either (i) La Perla's damaged trellises and irrigation system; or (ii) the destroyed La Perla Red Barn.

Second, Hallmark Specialty/Western World's combined $10 million excess property policy limit would be reduced to $5.2 million after its $4.8 million La Perla Winery-related limit is exhausted.  The $5.2 million would allow Hallmark Specialty/Western World to pay, pursuant to subpart 1.a, $4,353,414.20 of SMV's remaining property damage and losses, which would consist of: (i) the $614,753.41 still needed to fully repair the destroyed Chevalier Red Barn; (ii) the $1,246,220.25 needed to replace the Chevalier trellises and irrigation systems; and (iii) the $2,492,440.54 needed to replace the Miravelle trellises and irrigation systems.  Therefore, Hallmark Specialty/Western World must pay $9,153,414.20 of their combined $10 million 2020-21 property policy limit to compensate SMV for its Glass Fire-related property damage and losses.

These payments would not, however, exhaust Hallmark Specialty/Western World's combined 2020-21 excess property policy because their combined payment for La Perla Winery-related covered property damage is limited to $4.8 million due to AJG's negligence.   This means that at least $4,871,356.25 La Perla Winery-related covered property damages and losses would not be paid by Hallmark Specialty/Western World and perhaps AXIS.[19]

Accordingly, SMV demands that within 30 days: (i) Landmark/Kinsale pay the $2,340,465.14 remaining in their $5 million combined first layer excess property policy; (ii) Mt. Hawley pay its full $10 million policy limit of its 2020-21 second layer excess property policy;

---

[19] It is possible that SMV might be permitted under New York law to absorb the $846,585.80 needed to exhaust the Hallmark Specialty/Western World $10 million property limit, notwithstanding that AXIS's fourth layer excess property policy provides in its application of underlying insurance provision, that "liability of the Company attaches only after direct, physical loss or damage occurs to property covered under the Policy resulting directly from a peril insured under this Policy and: (1) the loss sustained by the Insured arising out of any one Occurrence exceeds the Limits of Liability of the Underlying Insurance as shown in the Schedule of this Policy plus the applicable amount of the deductible(s)…; and (2) the Companies providing Underlying Insurance have paid the full amount of their respective liability.  If so, AXIS would be obligated to pay $4,024,770.45 to compensate SMV for some of its remaining La Perla Winery-related replacement costs.

C | T | S | W

Dean C. Burnick, Esq.
Jordan E. Harriman, Esq.
January 12, 2022
Page 11 of 11

and (iii) Hallmark Specialty/Western World pay $9,153,414.20 of their 2020-21 $10 million combined third layer excess property policy   Alternatively, SMV demands that Landmark/Kinsale pay their full policy limit and Mt. Hawley pay, at minimum, a $8,376,009.33 partial advance payment to compensate SMV for the property damage and losses that it sustained at covered property due to the Glass Fire.

    Please contact us if you have any questions.  This letter is written without prejudice, and with all rights reserved.

Very Truly Yours,

Jay B. Spievack

Cc: Rebecca Weinreich, Esq.
    Michael D. Prough, Esq.
    Jonathan Goken, Esq.

{00467628.DOCX; 2}

# EXHIBIT 22

# C | T | S | W

### COHEN TAUBER SPIEVACK & WAGNER P.C.

Jay Spievack

direct:  212-381-8735
e-mail:  jspievack@ctswlaw.com

April 14, 2022

**Vía Email**

Jordan E. Harriman, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
633 West 5th Street Suite 4000
Los Angeles, California 90071

**Re:   *Spring Mountain Vineyard, Inc. v. Landmark American Ins. Co, et. al,
No. 22CV000270, Napa County, California (filed March 11, 2022)***

Dear Jordan:

As you know, we represent Spring Mountain Vineyards, Inc. ("SMV"). You recently informed us that your law firm will represent, among others, Landmark American Insurance Company ("Landmark") and Kinsale Insurance Company ("Kinsale").

Per our earlier coverage correspondence, Landmark and Kinsale know that SMV demands that your clients pay their $5 million combined ($2.5 million each) first layer excess policy limit to SMV to compensate it for some of its property damages and losses sustained due to Glass Fire.[1] By letter dated September 29, 2021, Landmark and Kinsale stated that they had no additional coverage obligation under their combined policies and refused to pay the full combined $5 million first layer excess policy limits to SMV.

Reference is made to (i) Landmark's Service of Suit (California) Endorsement; and (ii) Kinsale's Common Conditions-Property #14 Service of Suit Endorsement. Pursuant to their respective Service of Suit Endorsements, SMV refers to the above-referenced lawsuit and confirms its request that Landmark and Kinsale submit to the jurisdiction of the state courts located in Napa County, California.[2]

---

[1] In its November 2, 2021, Revised Proof and Statement of Loss, SMV informed its 20-21 Excess Property Insurers that it sustained $38,532,411.11 in damages due to property damage and loss caused by the Glass Fire. First Special Insurance Corporation, Landmark and Kinsale have paid only approximately, $7.5 million to SMV for its Glass Fire related damage, of which Landmark/Kinsale only paid approximately $2.5 million of the $5 million in insurance proceeds due pursuant to its combined first layer excess policies.

[2] Your law firm recently informed us that it also represents Hallmark Specialty Insurance Company ("Hallmark Specialty"), Western World Insurance Company ("Western World") and AXIS Surplus Insurance Company ("AXIS") in the above-referenced lawsuit, each of whom also denied coverage (*see* McLarens' September 29, 2021, Ltr., pp 4-9). Hallmark Specialty and Western World share the combined $10 million ($5 million each) third layer

---

C │ T │ S │ W

Jordan E. Harriman, Esq.
April 14, 2022
Page 2 of 2

   This coverage dispute arises from the 20-21 Excess Property Insurers' refusal to provide insurance proceeds to SMV pursuant to the coverage that they promised, issued, and delivered to a California policyholder to cover its California property against property damage and losses. None of the 20-21 Excess Property Insurers disclosed to SMV any such forum selection clause that would purport to require a California policyholder to litigate coverage for damage and loss at its California property in any jurisdiction other than California and no such alleged provision was freely negotiated with SMV by any 20-21 Excess Property Insurer. Therefore, any provision that allegedly requires SMV to litigate this dispute in a jurisdiction other than California likely would not be enforced where, as here, the proposed alternative forum (i) has no connection to the parties or the disputes; (ii) was not disclosed to SMV prior to the loss; and (iii) violates California public policy.[3]

      Very Truly Yours,

      Jay B. Spievack

cc: Michael Prough, Esq.
   Jordan Stanzler, Esq.
   Jackson Davis, Esq,

---

excess coverage from $20 million to $30 million. SMV's Glass Fire related damages exceed $20 million (*see* SMV's November 2, 2021, Revised Proof and Statement of Loss). SMV refers Hallmark Specialty and Western World to the above-referenced lawsuit and requests that Hallmark Specialty and Western World submit to the jurisdiction of the state court located in Napa County, California (*see* Hallmark Specialty's Service of Suit Endorsement HP SS 01 01 20).

[3] This list is not exclusive and SMV submits that there are several additional reasons why a California court will not enforce a purported alternative forum selection clause under the circumstances of this matter.